970 P.2d 506

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Cullen K. KANAE, Defendant–Appellant**

**No. 20960**

Intermediate Court of Appeals of Hawai'i.

Nov. 23, 1998.

Michael G.M. Ostendorp and Dale L. Bennett (law office of Michael G. M. Ostendorp),

Honolulu, on the brief for defendant-appellant.

Bryan K. Sano, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff-appellee.

WATANABE, ACOBA, and KIRIMITSU, JJ.

WATANABE, J.

The sole contention raised by Defendant–Appellant Cullen K. Kanae (Defendant) in this appeal is that his right to due process was violated when the Circuit Court of the First Circuit (the circuit court) suspended jury deliberations for seventeen days because several jurors became ill and one juror had to leave Hawai'i for a pre-scheduled vacation cruise to Mexico.

We affirm.

## BACKGROUND

On September 26, 1996, Plaintiff–Appellee State of Hawai'i (the State) filed a complaint against Defendant, charging him with Robbery in the First Degree and Burglary in the First Degree. At the start of jury selection on December 17, 1996, the circuit court admonished the fifteen members of the jury panel that they should not discuss the case with other prospective jurors or "anyone else for that matter." [1] The circuit court also informed the prospective jurors of the anticipated trial schedule:

> We will be in session tomorrow on December 18[th]. If we are done with jury selection in this case, we will be starting proceedings. You will be in session on Friday[,] December 20th. That is because the Thursday of every week in this [c]ourt are [sic] reserved for motions and sentencing and other matters. So we do not have trial proceeding in this [c]ourt on Thursdays anyway.

> So that even without holidays that would have been the normal occurrence that you would not be hear [sic] on Thursday; Monday[,] December 23rd[,] in the morning— I'm sorry—in the afternoon we'll be in session for the purposes of this trial on the 23rd in the afternoon.

> Now Christmas Eve[,] I can be here. And for those of you that are selected as jurors, I will defer to your collective consensus as to whether you wish to proceed on that day. Obviously, Christmas day we are not here. We will then resume with proceedings on Monday[,] December 30th[,] and then again on December 31st. And for those of you who are members of the jury, I will defer to your consensus with how you wish to proceed on that day. We will resume—and January 1st is of course a holiday. We will resume again on January 2nd which is a Thursday. That's the only Thursday that I'm actually goning [sic] to be hearing matters because we did not schedule sentences that day, and Friday[,] January 3rd.

> And then the week beginning January 6th, we'll go back to our normal schedule which will be January 6th, the Monday, the Tuesday, the Wednesday and the Thursday off. And we should be finished with this trial by the end of that week. It should not extend past that time at all. So that's the schedule hopefully that we'll be looking at in this case.

During the course of *voir dire* examination, a prospective juror inquired whether the trial would go past January 7, 1998, since she was scheduled to leave that day for a vacation cruise to Mexico. The circuit court responded: "We should be finished. We'll be finished. We'll be finished."

After both the deputy prosecutor and the defense counsel declined to challenge any of the jury panel members for cause, the circuit court called a bench conference to discuss its

---

**1.** The specific admonition given by the Circuit Court of the First Circuit to the jury panel was as follows:

Now there's some very important rules that do come into play both for purposes of jury selection and for the trial. And those rules are that since once we've called this case, you are not to discuss this case with any of the other prospective jurors or with anyone else for that matter. And you are not to talk with the attorneys, with [Defendant–Appellant Cullen K. Kanae], or any of the persons who may be called as witnesses in this case. And if anyone tries to talk to you about the case, you should let our bailiff know at the first opportunity, and we'll address it then.

concern about the juror who was scheduled to leave on vacation:

THE COURT: Now I know you both have passed for cause, but I do have a concern with the juror who is going on the cruise in terms of us getting done in time for her to leave on her cruise. She's going [on] January 7th.

[DEPUTY PROSECUTOR]: I think we can finish.

THE COURT: I think if we don't, I think that's what we have alternates for if this problem does arise.

\* \* \*

... You want to keep her? I take it you want to keep her.

Neither counsel responded to the circuit court's inquiry, and shortly thereafter, the jury (with three alternates) was impaneled.

The evidentiary portion of Defendant's trial began on Wednesday, December 18, 1996, continued on December 20, 23, and 30, 1996, and concluded on January 2, 1997. The record reflects that each time the circuit court recessed the jury for lunch or for the day, the court reminded the jurors that they should not communicate with fellow jurors or others about the case. Closing arguments were delivered on January 3, 1997, and by this time, three of the seated jurors had been excused and replaced by the three alternates.

Following closing arguments, the circuit court delivered the following instruction to the jury:

During the course of this trial[,] you have received all of the evidence that you may consider to decide the case. You must not attempt to gather any information on your own which you think might be helpful. Do not engage in any outside reading on any matter having to do with this case. Do not refer to dictionaries or other outside sources. Do not visit any places mentioned in the case. Do not in any other way try to learn about the case outside the courtroom.

During your recesses from deliberations, when you are released to go home in the evening, you must not discuss this case with anyone or permit anyone to discuss the case with you. You must not read or listen to news accounts about this case, if there are any. You must not discuss this case with any person other than your fellow jurors. And you must not reveal to the [c]ourt or to any other person how the jury stands, numerically or otherwise, until you have reached a unanimous verdict and it has been received by the [c]ourt.

The jury began its deliberations at 10:56 a.m. on January 3, 1997. However, because two jurors were not feeling well, the circuit court excused the jury at 2:40 p.m. that afternoon and advised them to return on Monday, January 6, 1997, at 9:00 a.m. to resume deliberations. On Monday, however, another juror called in to say that she was ill, had a fever, and would not be available until Wednesday, January 8, 1997, at the earliest. Because of the scheduled departure of the juror who was leaving for a vacation cruise to Mexico the following day, the circuit court excused the jurors and instructed them to return to complete deliberations on Tuesday, January 21, 1997, at 9:00 a.m., Monday, January 20th being a state holiday.

On January 16, 1997, Defendant filed a motion for mistrial. At the January 21, 1997 hearing on Defendant's motion, defense counsel pointed out that the trial "started on December 17th and took ... approximately three weeks to finish." Moreover, there was a hiatus of "approximately 20 days" between the day of the jury's "last meeting on January 2nd" and the day deliberations resumed on January 21, 1997. Defense counsel argued that "the jurors would not be able to remember everything from the trial adequately in order to reach a fair and just decision[,]" and therefore, a mistrial was appropriate. The State argued, on the other hand, that the delay favored Defendant and "actually [prejudiced] the State because [the State had] the burden [of proof]."

In denying Defendant's motion, the circuit court ruled, in pertinent part:

[T]he issue becomes one of whether or not some [sic] the situation poses such an instance of manifest injustice that it cannot have been cured such that the Defendant is absolutely deprived of a right to a fair trial in these proceedings.

And given that we began these proceedings with the understanding that they would be stretched over a period of time, the jurors were given an opportunity to take notes precisely for that reason.

Obviously[,] things occurred during the course of these proceedings that resulted in us having to delay the jurors's [sic] deliberations until today, that was [sic] certainly not foreseen[:] illnesses, holiday and so forth.

But nonetheless, I think the [c]ourt has the responsibility and certainly the authority as well, to fashion remedies to address these various things that come up during the course of the trial, and to ensure, as well in the course of doing so, that ... [D]efendant is not deprived of his right to fair trial.

Having informed all counsel of the time that we'd be stretching the trial and giving the jurors the opportunity to take notes, because of that, as well as allowing the jurors to take this break to come back and continue with their deliberations, the situation is one that this [c]ourt cannot find creates such an injustice, manifest injustice to ... Defendant that he is foreclosed absolutely from having a fair trial in these proceedings.

The jury is in deliberations, indeed, as we speak, and if they have any sort of problem with regard to that, I'm certain we will hear from them in the way—by way of their communication to the [c]ourt.

We've addressed whether they have any difficulty recalling or being able to make a decision in this case.

I don't have any reason to believe that that is the case, and so therefore, the [c]ourt will deny ... Defendant's motion for mistrial in these proceedings.

At 1:59 p.m. on January 21, 1997, the jury returned a verdict, finding Defendant guilty as charged. On February 7, 1997, the circuit court filed a written order that reflected its oral denial of Defendant's motion for mistrial. On August 28, 1997, the circuit court entered judgment, convicting Defendant of the original charges against him, sentencing him to serve a term of life imprisonment for Robbery in the First Degree and a concurrent term of twenty years for Burglary in the First Degree, and ordering him to pay $980.02 in restitution.

This appeal followed.

## DISCUSSION

### A.

 On appeal, a trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard. *State v. Loa,* 83 Hawai'i 335, 349, 926 P.2d 1258, 1272, *reconsideration denied,* 83 Hawai'i 545, 928 P.2d 39 (1996). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (quoting *State v. Merino,* 81 Hawai'i 198, 211, 915 P.2d 672, 685 (1996)) (internal quotation marks omitted).

Reviewing the record in this case according to the foregoing standard, we cannot conclude that the circuit court abused its discretion in denying Defendant's motion for mistrial.

### B.

 As a general rule,

where a separation of a jury during deliberations in a criminal case is in violation of a statute, rule, or order of court, or occurs under circumstances which might expose the jurors to improper influences, a presumption of prejudice is created and the burden is placed upon the prosecution to show that no injury resulted.

Annotation, *Separation of Jury in Criminal Case After Submission of Cause—Modern Cases,* 72 A.L.R.3d 248, § 2[a] at 254 (1976). *See also* 75B Am.Jur.2d *Trial* § 1531, at 279 (1992). Where, on the other hand, a separation of jurors during criminal trial deliberations is within the authority of the trial court and not in violation of a statute, rule, or court order, the burden of proving reversible harm as a result of the separation is generally on the defendant. Annotation, 72 A.L.R.3d 248,

§ 2[a] at 254; 75B Am.Jur.2d *Trial* § 1531, at 279.

In Hawai'i, the statute regarding jury separation during trial provides as follows:

It shall not be necessary in any case for any trial jury after having been finally accepted and sworn to try the cause, to be segregated, locked up, or otherwise confined at any time prior to retiring to deliberate upon their verdict; provided that the court may in its discretion order and direct that the trial jury in any case shall be segregated, locked up, or otherwise confined after being finally accepted and sworn to try the cause and until a verdict is arrived at or the jury discharged.

Hawai'i Revised Statutes (HRS) § 635–32 (1993). The Hawai'i Supreme Court has stated that under the "clear and unambiguous" terms of the foregoing statute, previously numbered as Revised Laws of Hawai'i 1925, § 2424, "it is optional with the trial judge whether to segregate the jury or not." *Territory v. Fukunaga*, 30 Haw. 697, 731 (1928). The supreme court has also stated that the separation of a jury *during deliberations* does not constitute prejudicial conduct as a matter of law, "but is simply a circumstance which, with other circumstances, ought to be taken into account by the court in determining whether or not a new trial should be granted." *Kealoha v. Tanaka*, 45 Haw. 457, 469–70, 370 P.2d 468, 475 (1962) (quoting 39 Am.Jur. *New Trial* § 89, at 103). Moreover, according to the supreme court, "the best reasoned cases have held that there must be some evidence of other misconduct, in addition to the mere fact of separation, which has operated to the party's prejudice." *Id.* (internal quotation marks and ellipsis omitted).

■ Since the Hawai'i courts, pursuant to statutory authority and case law, are vested with discretion to separate a jury during deliberations, the burden of proving reversible harm as a result of the jury separation rests on Defendant. In meeting his burden, Defendant must adduce "some evidence of other misconduct ... which has operated to the party's prejudice." *Id.*

## C.

■ Defendant contends that the long hiatus in deliberations in this case was so egregious that jury misconduct which operated to his prejudice must be presumed. In *Kealoha*, however, the supreme court emphasized that separation of a jury during deliberations is not prejudicial per se, "but is simply a circumstance" which must be taken into account in determining whether a new trial is warranted. 45 Haw. at 469–70, 370 P.2d at 475.

In other jurisdictions, appellate courts have considered a number of factors in determining whether a trial court's suspension of jury deliberations constituted an abuse of discretion, warranting a new trial: (1) whether there was a good reason for suspending deliberations and separating the jury (*see, e.g., People v. Santamaria*, 229 Cal.App.3d 269, 280 Cal.Rptr. 43, 47–48 (Cal.App. 1st Dist.1991)); (2) whether the trial court properly admonished the jurors against communicating about the case with others prior to the jurors' separation (*see, e.g., United States v. Richardson*, 817 F.2d 886, 888–90 (D.C.Cir. 1987)); (3) whether the case was so complex that prolonged interruption of jury deliberations would have a significant effect on the jurors' "ability to remember complicated facts, as well as on their recall and understanding of instructions," (*see, e.g., Santamaria*, 280 Cal.Rptr. at 50–51); (4) whether alternatives to suspending deliberations existed (*see, e.g., Hines v. United States*, 365 F.2d 649, 651 (10th Cir.1966)); (5) the extent of publicity surrounding the case (*see, e.g., United States v. Acuff*, 410 F.2d 463, 467 (6th Cir.), *cert. denied*, 396 U.S. 830, 90 S.Ct. 82, 24 L.Ed.2d 81 (1969)); and (6) the length of the suspension of deliberations (*see, e.g., Santamaria*, 280 Cal.Rptr. at 48, 50).

Based on our examination of the record in this case in light of the foregoing factors, we are unable to conclude that the circuit court abused its discretion in suspending jury deliberations for seventeen days.

The record reflects that this case essentially boiled down to a credibility contest and did not involve any complex theories or defenses or extensive publicity. The circuit court clearly informed the parties at the outset of

the trial that due to the holiday season, the trial would stretch out over a period of time. Indeed, in anticipation of a protracted trial, the circuit court allowed the jurors to take notes of the proceedings. Although both parties were informed during *voir dire* that a juror was scheduled to leave on a vacation cruise, neither party challenged that juror's presence on the jury. By the time this case was submitted to the jury for deliberations, three sitting jurors had been excused and replaced by the three alternates. Therefore, the circuit court had no alternative but to suspend jury deliberations after several jurors became ill and one juror left, as expected, on her vacation cruise. Finally, the record contains ample evidence that throughout the trial, the circuit court admonished the jurors each time they left the courtroom that they should not discuss the case with others. Moreover, on January 3, 1997, before the jurors began deliberations, the circuit court gave them a long admonition about not discussing the case with others or consulting outside sources. The circuit court also supplied the jury with a written copy of its instructions before deliberations began.

We also note that a seventeen-day hiatus in jury deliberations is not unprecedented. The recess in this case is analogous to the eighteen-day recess in *Hamilton v. Vasquez,* 17 F.3d 1149 (9th Cir.1994), *cert. denied,* *Hamilton v. Calderon,* 512 U.S. 1229, 114 S.Ct. 2728, 129 L.Ed.2d 851 (1994), where the United States District Court for the Southern District of California recessed jury deliberations in a first-degree murder, burglary, robbery, and kidnapping trial for eighteen days because of the winter holidays and because one juror could not deliberate during the week immediately before Christmas. *Id.* at 1159. The Ninth Circuit Court of Appeals held that the trial court had "legitimate reason" to recess deliberations and rejected the defendant's claim that such a delay violated his due process rights.

## CONCLUSION

For the foregoing reasons, we conclude that the circuit court did not abuse its discretion when it suspended jury deliberations in this case. Accordingly, we affirm the August 28, 1997 judgment.