Argued and submitted June 3, 2005, sentences vacated; remanded for
resentencing; otherwise affirmed July 5, petition for review denied
September 6, 2006 (341 Or 367)

## STATE OF OREGON,
*Respondent,*

*v.*

## DOROTHY GRACE VEGA,
aka Dorothy Grace Jones,
aka Dorothy Jones,
aka Dorothey Grace Carver,
aka Kristy Jordawn Salazar,
*Appellant.*

20-01-23635; A119247

139 P3d 260

James N. Varner argued the cause and filed the briefs for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the supplemental brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General. On the respondent's brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Daniel J. Casey, Assistant Attorney General.

Before Linder, Presiding Judge, and Haselton\* and Ortega, Judges.

LINDER, P. J.

---

\* Haselton, J., *vice* Ceniceros, S. J.

## LINDER, P. J.

Following a jury trial, defendant was convicted of first-degree assault (ORS 163.185), two counts of second-degree assault (ORS 163.175), first-degree criminal mistreatment (ORS 163.205), and menacing (ORS 163.190), all arising from defendant's repeated torture of her husband. After the close of evidence, but before closing arguments, the trial court twice—first, for six days, and then for an additional 21 days—continued the trial to accommodate a juror whose husband had been seriously injured. When the trial court granted the second continuance, defense counsel moved for a mistrial. The trial court denied the motion. Counsel then presented closing arguments to the jury, and the jury found defendant guilty of the above charges. On appeal, defendant challenges the denial of her motion for a mistrial; she also raises a sentencing issue. For the reasons explained below, we remand for resentencing but otherwise affirm.

The pertinent facts are procedural. On the third day of trial, after a noon break in the proceedings, the trial court learned and advised the parties that a juror's husband had been critically injured in an on-the-job accident and that the juror would not be able to return to finish the trial that day.[1] At that point, the parties had each rested and all that remained was to present closing arguments. Out of the jury's presence, the court and counsel discussed various responses to the juror's anticipated absence, including the possibilities of proceeding with an 11-person jury or declaring a mistrial.[2] Ultimately, defense counsel and the prosecutor agreed with the court that, if the remaining jurors would be available on the next available court day—six days hence—they would hope for the absent juror's return and would complete the

---

[1] Specifically, the trial court advised the parties on the record:

"[T]oday at 12:25 the Court received a phone message from [the] Chaplain * * * from Sacred Heart hospital indicating that Juror No. 27['s] * * * husband had been seriously injured on the job and that he's in critical condition. And that [the juror] is in no condition, no mental state to return for the continuation of her jury service, with the identity of the employer and phone number provided by the chaplain.

"So we need to discuss options here."

[2] Nothing in the record suggests that an alternate juror was available.

trial on that day. The court then explained the situation to the remaining jurors, ascertained that they all would be available on the day set to resume the trial, and recessed the trial until that date.[3] The court admonished the jurors "not to discuss the case with anybody, and of course not to make any decision about the case in your own individual mind, and not to investigate the case or look up any information."

When the court reconvened the proceedings six days later, the juror was still unavailable. Her husband remained unconscious, although he was showing some signs of improvement. An outgoing message left on the juror's voice mail at work told callers that she would be out for a minimum of three weeks. After being apprised of the juror's status, defense counsel moved for a mistrial, asserting that the juror's continued unavailability constituted "a new incapacity." Defense counsel argued that, "even if [the juror] were here, [the] things that she's been through in the last seven days would make it very difficult for her to remember the trial." The prosecutor urged the court to continue the trial, although defense counsel maintained that the only appropriate course of action was for the court to declare a mistrial.

After determining that the remaining jurors would be available when the case reconvened, the trial court denied defendant's motion for a mistrial and continued the case for an additional 21 days. In doing so, the court admonished the jurors, "Please don't discuss the case, especially as far as the evidence and any possible conclusion from that evidence, with anyone. Even family members on that point, please. And please don't make any final decision in your own mind as to the outcome of the case."

Three weeks later, the trial court reconvened as scheduled. All the jurors, including the juror whose husband had been injured, were in attendance. Without the jury present, the trial court advised counsel that it intended to ask the jurors "if they have had any contact with anybody about the

---

[3] The trial court advised the remaining jurors that the absent juror's husband was in critical condition with a serious head injury that would possibly result in his death during the first 24 to 48 hours after the injury. If he were to make it through the first 48 hours, his chances of living were good. For that reason, the trial court and the counsel initially believed that a six-day continuance might be enough.

case in the extended recess that we've had, and whether anybody has done any investigation or looked up any information about the case, or any of the counts or circumstances." The court also asked counsel, "Are there any specific questions either of you would like me to ask?" Neither counsel identified any other questions to pose to the jurors. When the court asked the jurors whether they had been exposed to any information about the case during the recess, the jurors all responded in the negative. Counsel then presented closing arguments. The trial court instructed the jury, and the jury found defendant guilty of the crimes set out above.

■ On appeal, defendant contends that the trial court abused its discretion when it denied her motion for a mistrial and ordered an additional 21-day continuance, following the initial six-day continuance, because of the juror's unavailability. Defendant argues that the delay resulted in actual prejudice to her ability to receive a fair trial. She also argues that a mid-trial delay of the length involved in this case is presumptively prejudicial. We begin with defendant's arguments that she was actually prejudiced by the postponement.

In arguing actual prejudice, defendant relies first on two comments that the trial court made to the jurors about the need for the continuance. According to defendant, the comments "clearly advised the jury that[,] but for defendant's exercise of her constitutional right to a twelve-person jury[,] the eleven jurors could have decided the case without a postponement." Defendant believes that the comments likely caused the jurors to blame defendant for the delay and thus prejudiced the jury against her.

The first of the two comments that defendant points to was made when the trial court initially postponed the trial for six days and told the jurors about that postponement. In the course of its explanation to the jurors, the court stated:

> "And so we'll do the best we can, and that's all I can say. And maybe some of the other options that we discussed today can be rediscussed and rethought by the parties here. And maybe we can continue with eleven, maybe not. But the Constitution says twelve, and so we can't force anything else. That's our dilemma here."

The second comment occurred when the trial court addressed the jury after the initial six-day continuance, but before the 21-day second continuance. In telling the jurors that there would be a second recess, the trial court explained:

"We've spent a lot of time, and I mean a lot of time here, discussing various options as to procedures. And we have constitutional requirements to meet and statutory requirements to meet, and we're trying our best to keep faith with those obligations that we all have here.

"The outcome of all the discussions has been this. And it will involve another recess, unfortunately.

"We would like to present the case, if at all possible, to the twelve jurors—the eleven of you and [the missing juror]—who were chosen to be the jurors."

We disagree that the comments prejudiced defendant by suggesting that it was defendant who was responsible for the delay. Certainly, the trial court did not tell the jurors that defendant was insisting on proceeding with a 12-person jury. Nor did the court's comments imply that. And even if they contained such an implication in the abstract, in context, the implication was dispelled by other statements that the trial court explicitly made to the jurors. Specifically, the trial court personally apologized to the jurors for the "extraordinary delays" and emphasized that the delay was *not* caused "by you or counsel or anyone else." Given the trial court's express disclaimer, and in the absence of more affirmative statements to the contrary, we conclude that the trial court's comments did not actually bias the jurors against defendant by causing them to blame her for the delay.

In arguing actual prejudice, defendant also points to a comment by the trial court that, in her view, caused the jurors to rely inappropriately on each other's recollections in their deliberations. Specifically, when the trial court granted the second continuance for 21 days, the trial court admonished the jury (as it had in granting the initial six-day continuance) about discussing the case and making premature decisions. In the midst of doing so, the trial court observed:

"The genius of the jury system lies in the collective discussion of evidence and the instructions, and you haven't received any of those yet. And the studies that I have read—

and I've read several, maybe because of being a psychology major before law school—is that—is to the effect that the collective memory of twelve people comes up with close to 100 percent of total recall, even though any one person's recall might be under 20 percent. You get six or twelve people together, with a short trial or a long trial, and they test out pretty close to 100 percent collectively, but nowhere near that individually."

Defendant argues that the trial court's observation in that regard prejudiced her, because its statement essentially "advised" the jurors that, if they had individually "forgotten evidence during the total delay," then they "should rely solely upon the recollection of other jurors who purport to recall."

We disagree that the trial court's comment contained such stark advice or told the jury to do anything inappropriate. The jury deliberation process is, by design, a collaborative one. Jurors are not asked to cast individual votes at the conclusion of the case, without group discussion and review of the evidence. Rather, they retire to deliberate among themselves and in private. By design, the jury process relies on collective analysis, discussion, and weighing of the evidence in the course of reaching a verdict.[4] Thus, by the very nature of the process, the jury will necessarily use "collective memory" to some extent in its deliberations. Although individual jurors must weigh the evidence for themselves, the jury, as a collective body, will normally reach a consensus regarding the issues by virtue of collaborative discussion. No doubt it is commonplace for some jurors, with or without a continuance of the trial, to overlook or be unable to recall specific testimony or other evidence that other jurors recall well and believe is highly probative. The point of the system of collective jury deliberations is to let those differing recollections come to light and to let the jurors as a group reconcile them. The trial court's statement in this case, although perhaps unconventional, merely acknowledged that reality.

---

[4] As *Black's Law Dictionary* 459 (8th ed 2004) describes, "deliberation" by a jury refers to "the process by which a jury reaches a verdict, as by analyzing, discussing, and weighing the evidence." *See also* 89 CJS 425 § 790 (2001) (defining "deliberation" as "a collective process, not the solitary ruminations of individual jurors"); 89 CJS 426 § 791 (2001) (noting that premature jury deliberations are improper, in part, because "they are likely to involve only a subset of the jury, contrary to the goal of collective deliberations").

Moreover, even if the trial court's comments arguably suggested that jurors could inappropriately rely on other jurors' memories, nothing in this record establishes that any of the jurors had any need to do so. Instead, as noted earlier, when the jury was reconvened after the second continuance, the trial court asked them questions about whether they had been exposed to any information about the case during the recess. The trial court also asked counsel if they wanted any other specific questions posed to the jurors. With the assistance of the trial court, defendant could have asked the jurors how well they recalled the evidence. But defendant expressly declined that opportunity. Without any showing that any of the jurors had any difficulty in that regard, there is even less reason to conclude that the trial court's comments could have caused defendant any actual prejudice.

We turn, then, to defendant's alternative argument that the delay in the trial was of such duration that prejudice, in violation of defendant's federal due process right to a fair trial, must be presumed.[5] As we have previously observed, "[g]enerally, there must be some degree of actual prejudice to the defense in order to establish a constitutional violation of sufficient magnitude to justify dismissal." *State v. Kirsch*, 162 Or App 392, 399, 987 P2d 556 (1999) (citing *State v. Mende*, 304 Or 18, 23, 741 P2d 496 (1987)). Defendant relies, however, on *United States v. Hay*, 122 F3d 1233 (9th Cir 1997). There, the Ninth Circuit—after acknowledging that a defendant normally must demonstrate actual prejudice in this context—held that, when the "length of the separation involves such a probability that prejudice will result * * * it must be deemed inherently lacking in due process." *Id.* at 1236 (internal quotation marks omitted).

The issue for our consideration, then, is under what circumstances a midtrial continuance in a jury trial, granted over a defendant's objection, violates the defendant's due process rights in the absence of actual prejudice. Because the

___

[5] Although defendant does not explicitly phrase her argument in terms of due process, the sole authority on which she relies was decided on that basis; accordingly, we interpret her argument to be based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

issue appears to be one of first impression in Oregon, we look to other jurisdictions for guidance in examining the issue.

■ Courts have been reluctant to pick a particular number of days beyond which any continuance presumptively violates a defendant's constitutional rights. *Compare, e.g., People v. Santamaria*, 229 Cal App 3d 269, 280 Cal Rptr 43 (1991) (determining that the defendant's due process rights were violated when the trial court released the jurors for 11 days during deliberations), *with People v. Gray*, 37 Cal 4th 168, 33 Cal Rptr 3d 451, 118 P3d 496 (2005) (approving 338-day hiatus between guilt and penalty phases of trial while defendant appealed guilty verdict; hiatus occurred at a natural breaking point). Instead, courts tend to focus on a number of factors in evaluating a trial court's decision to continue a jury trial midcase. In *State v. Kanae*, 89 Haw 198, 202, 970 P2d 506, 510 (Ct App 1998), the Hawaii Court of Appeals synthesized the relevant cases and set out a comprehensive list of the factors that courts have used in determining whether a violation of due process has occurred. The court listed these six factors:

> "(1) whether there was a good reason for suspending deliberations and separating the jury; (2) whether the trial court properly admonished the jurors against communicating about the case with others prior to the jurors' separation; (3) whether the case was so complex that a prolonged interruption of jury deliberations would have a significant effect on the jurors' ability to remember complicated facts, as well as on their recall and understanding of instructions; (4) whether alternatives to suspending deliberations existed; (5) the extent of publicity surrounding the case; and (6) the length of the suspension of deliberations."

*Id.* (internal citations and quotation marks omitted).

The Ninth Circuit's decision in *Hay* and the Hawaii court's decision in *Kanae* illustrate the application of those factors. In *Hay*, the Ninth Circuit examined a 48-day continuance that, like the continuance in this case, occurred after the presentation of the evidence but before closing arguments, instructions, and deliberations. The Ninth Circuit held that granting a continuance was error—despite the absence of a showing of actual prejudice—because (1) an

alternate juror was available; (2) the case involved "complex, technical evidence against two defendants over a period of nearly four months"; and (3) a "forty-eight-day jury separation during a criminal trial is unprecedented." *Hay*, 122 F3d at 1235-36. In *Kanae*, in contrast, the case "did not involve any complex theories or defenses or extensive publicity." 89 Haw at 202, 970 P2d at 510. Nor did it involve a significant potential for the jurors to be unable to recall the evidence. Rather, the circuit court, anticipating a "protracted trial," had allowed the jurors to take notes of the proceedings. *Id.* at 203, 970 P2d at 511. At the time of the continuance, no alternate jurors were available. Finally, as in this case, the trial court in *Kanae* carefully admonished the jurors not to discuss the case with others and not to consult outside sources. *Id.*

■     We believe that the factors enunciated by the *Kanae* court best balance considerations of the need for the continuance, potential prejudice to a defendant, and the inevitable and complex realities faced by trial courts in scheduling jury trials. Accordingly, we consult those factors to determine whether—despite the lack of a showing of actual prejudice—a defendant's due process right to a fair trial is violated by a midtrial continuance.

Examining the record in this case in light of those factors, we conclude that defendant's due process rights were not violated by the continuance.[6] Three considerations lead us to that conclusion. First, the trial court had a compelling reason for ordering the continuance: one juror's husband had been critically injured, rendering that juror temporarily unavailable for service, and there were no alternate jurors available. Second, the trial court more than once admonished the jurors not to communicate with anyone regarding the case and not to form any opinions about the case until after receiving the court's instructions. Third, and perhaps most important, the presentation of evidence in this case was likely to be easily recalled by the jurors. The trial was relatively short, lasting approximately three days, and the jurors were

---

[6] The parties dispute whether the continuance at issue was for the entire period (the initial six-day continuance plus the 21-day continuance) or only for the 21-day period after defendant moved for a mistrial. Because our analysis would be the same under either time period, we treat the continuance as one for 27 days.

allowed to retain their notes. The issues were not complex, nor was the proof subtle or intricate. To the contrary, the evidence was stark and dramatic.[7]

The continuance in this case, to be sure, was a significant one. But it was not unprecedented. *See, e.g., United States v. Smith*, 44 F3d 1259, 1268 (4th Cir 1995) (approving 32-day continuance); *Hamilton v. Vasquez*, 17 F3d 1149, 1159 (9th Cir 1994) (approving 18-day continuance); *Kanae*, 89 Haw at 198, 970 P2d at 511 (approving 17-day continuance). We caution, however, that, although the 27-day continuance did not result in a violation of defendant's due process rights under these circumstances, it lies at the outer boundary of the permissible range; the continuance here is, and should be, the rare exception, not the rule. Nonetheless, in these circumstances, the trial court did not err when it denied defendant's motion for a mistrial and continued the trial.

■ Finally, we turn to defendant's challenge to the trial court's imposition of departure sentences on Counts 1, 2, 3, and 4. The trial court imposed departure sentences on all but one count, based on several findings.[8] Defendant argues that, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), the court erred in imposing departure sentences based on facts that she did not admit and that the court did not submit to a jury. She concedes that she did not advance such a challenge to the trial court, but argues that the sentences should be reviewed as plain error. Under our decisions in *State v. Thomas*, 205 Or

---

[7] Defendant tortured her elderly, schizophrenic husband over an extended period of time. At one point, the torture was so severe that defendant's spouse received, over the course of a five-hour period, approximately 78 third-degree burns, covering substantial portions of his body. The jury was not likely to forget those scenes of violence that, as the court stated at sentencing, would "challenge even the imagination of Stephen King to describe."

[8] Specifically, the trial court based the departures on the following:

"[D]eliberate wanton cruelty to the victim; the defendant knew or had reason to know of the victim's particular vulnerability, he is a heavily medicated schizophrenic, some 40 years her senior, which increased the harm or threat of harm caused by the criminal conduct; the offense involved multiple incidents over a lengthy period of time; the offense resulted in a permanent injuries [*sic*] to victim (78 3rd degree burns, leaving scars); the degree of harm caused by this defendant was significantly greater than typical for the offenses."

App 399, 134 P3d 1038 (2006), and *State v. Ramirez*, 205 Or App 113, 133 P3d 343 (2006), the sentences are plainly erroneous. For the reason set forth in *Ramirez*, we exercise our discretion to correct the error.[9]

Sentences vacated; remanded for resentencing; otherwise affirmed.

---

[9] Defendant also raises a second assignment of error, arguing that the trial court erred in imposing a sentence that exceeded the statutory maximum. Because we remand for resentencing, we do not address that assignment of error.