Alvin KNUCKLES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2009–SC–000206–MR.

Supreme Court of Kentucky.

June 17, 2010.

Linda Roberts Horsman, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Kenneth Wayne Riggs, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

Appellant Alvin Knuckles appeals from his conviction of two counts of Trafficking in a Controlled Substance, First Degree, Second or Subsequent Offense; one count of Trafficking in a Controlled Substance, Second Degree, Second or Subsequent Offense; and three counts of Persistent Felony Offender, First Degree (PFO I). The final judgment of the trial court ordered that the sentences run concurrently in part and consecutively in part for a total of 25 years' imprisonment. Therefore, Appellant appeals to this Court as a matter of right.[1]

On April 27, 2007, Juanita Renner, after eluding police, was pulled over on suspi-

---

1. KY. CONST. § 110(2)(b).

cion of driving under the influence by a Kentucky State Police trooper and by Rockcastle County Sheriff's Deputy Joe Rush. Deputy Rush asked to see Renner's cell phone, where he found Appellant's phone number. Deputy Rush testified that Appellant's name was of interest to him because Appellant was known to sell drugs.

In order to avoid felony DUI charges, Renner agreed to work as a confidential informant for Deputy Rush, and to purchase drugs from Appellant. Renner met Deputy Rush on May 1, 2007, and made a phone call to Appellant, which was recorded. Appellant made arrangements for Renner to purchase three pills containing hydrocodone and one pill containing oxycodone. Renner gave Appellant $60 in buy money. Appellant then purchased the pills from his supplier, and Renner returned to receive them. Renner's transaction with Appellant was recorded.

On May 14, 2007, Appellant again contacted Renner. Through a series of recorded phone calls, Renner agreed to purchase 22 oxycodone pills for $1,000. Renner completed the transaction, which was recorded, and delivered the pills to Deputy Rush.

Appellant was indicted separately for each of the two drug transactions, for a total of three trafficking counts and three PFO counts. The trafficking counts were subsequently amended to reflect that they were second or subsequent offenses. The two indictments were also consolidated for trial.

Deputy Rush, Renner, and a drug analysis technician with the Kentucky State Police testified at trial, along with several other witnesses. The tapes of Renner's phone calls and transactions were played for the jury. The jury found Appellant guilty of all three trafficking counts and all three PFO counts, but returned a confus-

ing recommendation regarding whether the respective sentences should run concurrently or consecutively. The parties agreed to accept the lowest possible interpretation, and the court ordered that the sentences run concurrently in part and consecutively in part for a total of 25 years' imprisonment.

Appellant raises three arguments on appeal: that a 14–day continuance violated his due process rights, that the trial court erred in denying his motion to strike a juror who was involved with a substance abuse awareness group, and that he was erroneously subjected to double enhancement of his sentence. For the reasons that follow, we reject Appellant's arguments and affirm the judgment of the trial court.

## 14–DAY CONTINUANCE AFTER FIRST DAY OF TRIAL

■ The jury was sworn and the trial began on Monday, February 9, 2009. Most of the testimony on the first day came from Deputy Rush. Defense counsel extensively cross-examined Deputy Rush about allowing Renner to drive with a suspended license, failing to check Renner's background or perform a drug test on her, and failing to determine who was supplying pills to Appellant. The day ended with brief testimony from a drug analysis technician with the Kentucky State Police.

Before recessing for the day, the trial court admonished the jury not to discuss the case with anyone, and not to form or express an opinion about the case. The trial court further admonished the jury to have no contact with persons involved in the case, and to report any attempted communications.

The trial was scheduled to resume on Wednesday, February 11. In the interim,

however, the trial judge's wife, a Stage IV cancer patient, had a medical emergency requiring treatment at the National Institute of Health in Bethesda, Maryland. The trial judge entered an order continuing the trial generally pending further orders from the court. In the order, the court wrote:

> It is hereby DIRECTED that the Clerk of the Court shall notify each of the jurors in this case of the decision and provide them with a written copy of this order. During this continuance, each juror is, again, hereby **admonished not to have any discussion with any person regarding this trial, nor to form or express an opinion thereon. The jurors are further admonished to conduct no independent investigation regarding this matter.**

(Emphasis original). The clerk noted on the record that all jurors had been served with a copy of the order.

The judge accompanied his wife to Maryland for what was expected to be a short stay. However, additional complications arose, and the trial judge did not return to Kentucky until Saturday, February 21. The trial resumed on Monday, February 23. At that time, the court conducted voir dire, and asked the jurors if they had received and followed the court's admonition. All jurors responded that they had read and followed the admonition.

When the trial resumed, Appellant, through counsel, filed a motion for a mistrial citing the delay. In support of his motion, Appellant noted that Rockcastle County was a small community, and it was likely that jurors had been approached about the case. Appellant also noted that there had been no in-person admonition before the general continuance. In addition, Appellant argued that part of his trial strategy had been to shock jurors with the poor quality of the police investigation. Appellant was concerned that this shock value had been dulled in the minds of the jurors as a result of the delay. The trial court overruled the motion, which was renewed and again overruled as part of a motion for a judgment notwithstanding the verdict.

■■■ Appellant argues that the 14-day delay violated his due process rights and his right to a speedy trial. "The standard for reviewing the denial of a mistrial is abuse of discretion. A mistrial is appropriate only where the record reveals a manifest necessity for such an action or an urgent or real necessity." [2]

■■■ As the parties at trial noted, this appears to be an issue of first impression in Kentucky. We therefore draw on cases from other jurisdictions that have addressed the issue. Ordinarily, to constitute reversible error, a defendant must show actual prejudice resulting from a continuance or other separation of the jury.[3] However, even absent a showing of actual prejudice, a delay may still "involve[ ] such a probability that prejudice will result that

---

**2.** *Bray v. Commonwealth,* 68 S.W.3d 375, 383 (Ky.2002) (internal quotation marks and footnotes omitted).

**3.** *United States v. Diggs,* 649 F.2d 731, 738 (9th Cir.1981), *overruled on other grounds by United States v. McConney,* 728 F.2d 1195 (9th Cir.1984) (finding no reversible error in 11-day delay due to juror illness, stating that "the circuits are virtually unanimous that in order for a jury separation to constitute re-

versible error, the defendant must show that he suffered actual prejudice because of the separation.") (collecting cases); *People v. Behm,* 45 Mich.App. 614, 207 N.W.2d 200, 204 (1973) ("We cannot condone the act of the trial judge in adjourning the trial for two weeks after the jury was sworn, but we can find no prejudice to defendants arising from the adjournment.").

it must be deemed inherently lacking in due process."[4]

■ Where there is no showing of actual prejudice, courts have considered a number of factors to determine whether a due process violation has occurred, including the length of the delay, whether there was a good reason for the delay, whether the trial court properly admonished the jurors against communicating about the case with others prior to the separation, whether the case was so complex that a prolonged interruption would have a significant effect on the jurors' ability to remember complicated facts, whether alternatives to delaying the trial existed, and the extent of publicity surrounding the case.[5] In addition, prejudice is much more likely to be presumed where the delay occurs after jury deliberations have begun.[6]

In this case, Appellant has not shown any actual prejudice resulting from the delay. Appellant's cross-examination of Deputy Rush was not as fresh in the jurors' minds as if the trial had concluded promptly. However, defense counsel provided a summary during closing argument of problems with the Commonwealth's case. In addition, much of the incriminating evidence in this case came from Renner, who testified after the trial resumed.

Nor can we say Appellant's due process rights were violated as a matter of law. In this particular case, we do not believe that a 14–day delay resulted in a due process violation absent a showing of actual prejudice. The trial judge's absence was unavoidable. The court admonished the jurors not to discuss the case with anyone, both in person after the first day of trial and by a written order after the trial was continued generally. This was a drug trafficking case, and the evidence was not so complex that a 14–day delay would have a significant effect on the jurors' ability to remember the facts of the case. In addition, the most complex evidence—the tapes of the drug buys—was introduced after the continuance. No particularly good alternatives to delaying the trial existed in this case. The trial court stated that it had considered the possibility of having a special judge appointed. However, the judge expected his absence to be shorter than it ultimately was. Nor was this a case that was expected to stretch on for any significant length of time. In addition, the record does not reflect any publicity surrounding this case. Also, significantly, the continuance occurred prior to the beginning of jury deliberations.

In some circumstances, a 14–day delay can violate a defendant's due process rights absent a showing of actual prejudice. In this case, however, the circumstances weigh against concluding that Appellant was prejudiced as a matter of law.

4. *United States v. Hay*, 122 F.3d 1233, 1236 (9th Cir.1997) (quoting *Estes v. Texas*, 381 U.S. 532, 542–43, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965)) (internal quotation marks omitted) (48–day continuance inherently lacking in due process even absent showing of actual prejudice). *See also State v. White*, 129 Vt. 220, 274 A.2d 690, 693–94 (1971) (62–day separation of the jury prejudiced defendant as a matter of law).

5. *State v. Kanae*, 89 Hawai'i 198, 970 P.2d 506, 510 (Haw.Ct.App.1998) (setting out six factors used in cases involving a separation of the jury after deliberations had begun). *See also State v. Vega*, 206 Or.App. 668, 139 P.3d 260 (2006), *vacated on other grounds*, 345 Or. 316, 195 P.3d 64 (2008) (discussing the *Kanae* factors in the context of a delay that occurred midtrial, prior to the beginning of deliberations).

6. *See People v. Santamaria*, 229 Cal.App.3d 269, 280 Cal.Rptr. 43 (1991) (11–day recess violated defendant's due process rights where recess occurred after deliberations had begun and there was no good reason for the delay).

There was no manifest necessity requiring a mistrial.

## JUROR INVOLVED WITH OPERATION UNITE

■ During voir dire, the trial court asked if any juror was involved in a substance abuse awareness group. One juror stated that she was vice-chair of the local chapter of Operation UNITE.[7] Defense counsel moved to excuse the juror for cause, at which point the juror was questioned further at the bench. She stated that she was employed by the Board of Education as a teacher. She worked with the education branch of UNITE, but she also occasionally called in tips. She had no prior knowledge of Appellant's case, and had never seen Deputy Rush.

She stated that UNITE was an important part of her life, and serving as a juror would "weigh on me." She stated, "I think I can be fair. I think I'll think about my kids at school." When asked to explain what she meant, the juror explained, "My students are faced with drugs every day. And I obviously, that's why I'm working for them not to be on [drugs]." She stated that she would think about her students in the jury room "just like any normal person would ... hope that they don't ever have to deal with this, or what can I do to help prevent it." When asked if she could return a verdict of not guilty if the Common-

wealth did not meet its burden of proof, she stated, "I think I can."

The trial court overruled Appellant's challenge for cause, and made detailed oral findings. The court noted that it found the juror credible and that she "plainly indicated" that she was capable of disregarding any personal feelings and rendering a verdict based on the evidence. The court also noted that it would be impossible to seat a jury if jurors were expected to have no opinions on the issue of drugs. In addition, the court found that Operation UNITE has three distinct components: treatment, enforcement, and education, and that the juror was primarily involved with the education component. Ultimately, Appellant used a peremptory challenge to remove the juror.

■ A juror shall be excused for cause "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence...."[8] However, the trial court is granted broad discretion, and its decision will not be reversed unless the failure to excuse is an abuse of discretion (for questions of law) or clearly erroneous (for questions of fact).[9] In addition, whether a juror possesses a "'mental attitude of appropriate indifference' must be reviewed in the totality of the circumstances."[10]

■ We cannot say that the trial court abused its discretion in denying Appel-

**7.** Operation UNITE is "a federally-funded drug task force program designed to assist counties in joining their limited funds and resources to fight drug trafficking and abuse in Eastern Kentucky." *Jarvis v. Commonwealth*, No.2005–CA–001710–MR, 2006 WL 3690980 (Ky.App. Dec.15, 2006). *See* Operation UNITE: Unlawful Narcotics Investigations, Treatment and Education, http://www.operationunite.org (last visited May 20, 2010).

**8.** RCr 9.36(1).

**9.** *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky.2007); *Commonwealth v. Lewis*, 903 S.W.2d 524, 527 (Ky.1995).

**10.** *Montgomery v. Commonwealth*, 819 S.W.2d 713, 718 (Ky.1991) (quoting *United States v. Wood*, 299 U.S. 123, 146, 57 S.Ct. 177, 81 L.Ed. 78 (1936)). *See also Pennington v. Commonwealth*, 316 S.W.2d 221, 224 (Ky.1958) ("It is the probability of bias or prejudice that is determinative in ruling on a challenge for cause.").

lant's motion to excuse the juror for cause. The trial court is in the best position to judge the credibility of a juror.[11] The court made detailed findings that the juror could put aside any potential bias and render a verdict on the evidence. We agree that it would be impossible to seat a jury with no opinions on the issue of drugs. The trial court effectively discussed the issue with the juror, and found no reason to question her ability to render a fair and impartial verdict. There was no error in denying Appellant's challenge for cause.

### ALLEGED DOUBLE ENHANCEMENT

 Finally, Appellant argues that he was subject to double enhancement of his sentence during the penalty phase of the trial. After Appellant's conviction, the trial proceeded to a second or subsequent offense phase. The jury was informed that Appellant had previously been convicted of trafficking in a controlled substance in a 1998 judgment. After the jury found Appellant guilty of being a second or subsequent offender, the trial progressed to the persistent felony offender (PFO) phase. At this point, the jury was informed that Appellant was also convicted of escape and possession of a controlled substance in the same 1998 judgment. The jury also learned that Appellant was convicted of trafficking in a controlled substance in a 2004 judgment.

The Commonwealth "carved out" the 1998 trafficking offense to prove subsequent offender status, and then used the remaining felonies from the same judgment as part of its PFO proof. This is permitted by *Morrow v. Commonwealth.*[12] Appellant asks this Court to overrule *Morrow*, but we decline to do so. Therefore,

there was no erroneous double enhancement in the penalty phase of the trial.

For the forgoing reasons, the judgment of the Rockcastle Circuit Court is hereby affirmed.

All sitting. All concur.

---

11. *See Wood v. Commonwealth,* 178 S.W.3d 500, 515–16 (Ky.2005).

12. 77 S.W.3d 558 (Ky.2002).