H. Michael OGHIA, M.D., Appellant,

v.

Edwin Scott HOLLAN, Appellee.

No. 2011–CA–000779–MR.

Court of Appeals of Kentucky.

March 16, 2012.

Scott P. Whonsetler, Robert A. Ott, Louisville, KY, for appellant.

Scott E. Karem, Edmund P. Karem, Louisville, KY, for appellee.

Before COMBS, KELLER, and STUMBO, Judges.

## OPINION

KELLER, Judge:

Michael Oghia, M.D. (Dr. Oghia) appeals from a jury verdict and judgment in favor of Edwin Scott Hollan (Hollan). On appeal, Dr. Oghia argues that the trial court committed four reversible errors when it: (1) instructed the jury regarding the duty to inform; (2) failed to instruct the jury regarding comparative negligence; (3) improperly inserted itself into the proceedings by *sua sponte* stopping counsel for Dr. Oghia several times during his opening statement and cross-examination of Hollan; and (4) failed to declare a mistrial when counsel for Hollan allegedly referred to evidence outside the record in closing argument. Having reviewed the record and the arguments of counsel, we affirm.

## FACTS

At the outset, we note that the video record of the first day of trial has no audio. Therefore, as we discuss below, there is no audio of *voir dire*, the parties' opening statements, and Hollan's direct and cross-examinations. That being noted, it appears from the record we have that the following facts are not in dispute.

In the early morning of January 16, 2007, Hollan sought treatment at Kentucky River Medical Center for a kidney stone that had lodged in his ureter below his left kidney. Dr. Oghia attempted to remove the stone by inserting a ureteroscope through Hollan's urethra and into his ureter. The ureteroscope had a basket-like device on the end which Dr. Oghia used to capture the stone. When Dr. Oghia attempted to remove the ureteroscope and stone, he encountered difficulties and ultimately had to perform open surgery to remove the ureteroscope. During that surgery, Dr. Oghia discovered that Hollan's ureter had been damaged. Recognizing that he was not equipped to repair the damage, Dr. Oghia had Hollan transported to the University of Kentucky Medical Center (UK) for additional surgery. At UK, Dr. Strupe advised Hollan that the ureter could not be repaired. That being the case, Dr. Strupe advised Hollan that he could attempt to use a portion of Hollan's intestine to construct a ureter, a procedure with limited success and likely permanent incontinence, or he could remove Hollan's left kidney. Hollan elected to undergo kidney removal surgery.

Following his recovery, Hollan filed a medical malpractice suit against Dr. Oghia, alleging that Dr. Oghia did not adequately inform him of alternative treatment modalities. Hollan also alleged that Dr. Oghia should have removed the kidney stone using a less invasive and less risky procedure. At the conclusion of a three-day trial, the jury found in favor of Dr. Oghia with regard to the surgical procedure, but in favor of Hollan with regard to the adequacy of the information provided by Dr. Oghia. Based on its finding that Dr. Oghia had not adequately disclosed the risks of the surgery to Hollan, the jury awarded him $596,819.00 in compensatory damages. We set forth additional facts as necessary below to address the issues raised by Dr. Oghia on appeal.

## STANDARDS OF REVIEW

Dr. Oghia raises two issues regarding the jury instructions which, as questions of law, we review *de novo*. *Hamilton v. CSX Transportation, Inc.*, 208 S.W.3d 272, 275 (Ky.App.2006). We review the judge's denial of Dr. Oghia's motion for a mistrial for abuse of discretion because the trial judge is "the person best situated to properly evaluate ...

when a mistrial is required." *Kirkland v. Commonwealth,* 53 S.W.3d 71, 76 (Ky. 2001); *Woodard v. Commonwealth,* 147 S.W.3d 63, 68 (Ky.2004). With regard to the issue of the trial judge's conduct, we note that a trial judge is vested with significant discretion in the conduct of a trial, and we "will not interpose to control the exercise of such discretion . . . unless there has been an abuse or a most unwise exercise thereof." *Transit Authority of River City (TARC) v. Montgomery,* 836 S.W.2d 413, 416 (Ky.1992). With the appropriate standards in mind, we separately address the issues raised by Dr. Oghia below.

## ANALYSIS

### 1. Jury Instruction Regarding Duty to Inform

■ In 1999, Hollan sought treatment from Dr. Oghia for a kidney stone. At that time, Dr. Oghia performed a shock wave lithotripsy, which the expert witnesses described as breaking up the stone, inserting a stent, and letting the remnants of the stone pass naturally.

Hollan's wife testified at trial that, in 2007, Dr. Oghia advised her that he would be using the same procedure as he had in 1999; he did not mention ureteroscopy. As previously noted, we have no audio record of Hollan's direct and cross-examination testimony at trial. However, in his deposition, which is part of the record, Hollan testified that Dr. Oghia only discussed shock wave lithotripsy with him. Furthermore, Hollan testified in his deposition that he would not have agreed to the ureteroscopy procedure. We presume that his testimony at trial was consistent with the preceding. Dr. Oghia testified that he remembered talking with the Hollans; however, he could not remember specifically what was discussed. The expert witnesses testified that a physician has the duty to explain all of the treatment

options and their attendant risks to a patient so that the patient can make an informed decision regarding how to proceed.

At the conclusion of his case, Dr. Oghia offered a single standard-of-care jury instruction—"It was the duty of Defendant, H. Michael Oghia, M.D., in the care and treatment of Edwin S. Hollan, to exercise the degree of care and skill ordinarily expected of a reasonably competent urologist acting under similar circumstances." Dr. Oghia argues that this instruction "accurately and adequately" set forth the applicable law and is consistent with Kentucky's fondness for "bare bones" jury instructions. According to Dr. Oghia, the court should not have issued a separate jury instruction regarding his duty to inform Hollan of the risks of the procedure performed because doing so resulted in inconsistent verdicts. On the other hand, Hollan argues that the facts in this case necessitated a separate jury instruction.

We agree with Dr. Oghia that Kentucky jury instructions should be bare bones. However, we do not agree with Dr. Oghia that this overriding principle limits a judge's ability to instruct on separate duties of care, if appropriate. As noted by Hollan, the evidence indicated that Dr. Oghia had two duties of care—to treat Hollan with the care and skill of a reasonably competent surgeon and to disclose to Hollan the risks associated with surgery as a reasonably competent surgeon would. Because the evidence supported the issuance of two separate duty-of-care jury instructions, we discern no error therein.

Finally, on this issue, we note and disagree with Dr. Oghia's argument that the separate instructions resulted in inconsistent verdicts. As noted above, Dr. Oghia had two duties-the duty to disclose and the duty to reasonably and competently treat.

The expert witnesses who testified herein indicated that the ultimate choice of treatment, in circumstances such as these, is the patient's. If the physician does not adequately disclose the risks of treatment, as the jury herein found, the physician has violated his duty to inform, regardless of the adequacy of the ultimate treatment rendered. Therefore, the jury verdicts were not inconsistent.

### 2. Comparative Negligence

■ As previously noted, the Hollans testified that Dr. Oghia advised them that he was going to perform shock wave lithotripsy and that he did not mention ureteroscopy. Dr. Oghia introduced at trial a consent form signed by Hollan. The form indicates, to the extent it is legible, that Hollan understood that Dr. Oghia was going to perform ureteroscopy to remove the kidney stone. Hollan admitted, on re-cross-examination (this portion of his testimony is recorded), that he did sign the form. He believes that the portion of the form setting forth the procedure to be performed was blank when he signed it; however, he admitted he did not read the form. Mrs. Hollan testified that the form was not blank and that she could not remember exactly what was written on the form. However, she also testified that the writing on the form introduced into evidence was different from what she remembers. Furthermore, Mrs. Hollan testified that they had asked to speak with Dr. Oghia again before the surgery but that Dr. Oghia had not spoken with them.

Dr. Oghia could not remember completing the form and testified that the nurse usually presents the form to a patient for signature. However, Dr. Oghia signed the form indicating that he had "explained the nature, purpose, benefits, risks and alternatives to the proposed procedure(s);" that he had answered any questions; and that Hollan understood what he had explained.

Based on this evidence, Dr. Oghia argues that, when presented with the informed consent form, Hollan should have read it before signing it. Furthermore, Dr. Oghia argues that Hollan should not have signed a blank form and should not have submitted to surgery before speaking with him. According to Dr. Oghia, these actions and/or failures to act by Hollan justified the following comparative negligence jury instruction he offered:

> It was the duty of Edwin Hollan to exercise ordinary care for his own health, safety, and welfare. If you find for Edwin Hollan ... but are also satisfied from the evidence that Edwin Hollan failed to comply with this duty and that such failure on his part was a substantial factor in causing some injuries and/or damages, you will determine from the evidence and indicate what percentage of the total fault was attributable to Edwin Hollan.

Initially, we note, as did Hollan, that Dr. Oghia has not offered any statutory or caselaw to support his contention that a patient has the duties he outlined. Dr. Oghia has cited to *Mackey v. Greenview Hospital, Inc.*, 587 S.W.2d 249 (Ky.App. 1979), a case that imposes on a patient the duty to exercise ordinary care when providing a medical history; however, that is not the breach of duty Dr. Oghia complains of here.

On the other hand, Hollan has offered a case from Wisconsin, *Brown v. Dibbell*, 227 Wis.2d 28, 595 N.W.2d 358 (1999), to support his argument that the duties Dr. Oghia wants to impose do not exist in this case.[1] In *Dibbell*, the plaintiff chose to

---

1. We have reviewed numerous cases from throughout the country that mention informed consent and comparative negligence. However, the majority of those cases are not

undergo a preventive bilateral mastectomy. After undergoing the procedure, she had significant post-surgery difficulties, and she sued her surgeon, among others. In her suit, the plaintiff alleged that the surgeon had not adequately advised her of the alternative treatment modalities or of the risks involved in the treatment she underwent. The trial court issued a contributory negligence[2] instruction to the jury and the jury found the plaintiff equally at fault with the physician.

On appeal, the plaintiff argued that the trial court erred in issuing the contributory negligence instruction. The Wisconsin Supreme Court held, in pertinent part, that contributory negligence may apply in informed consent cases, but only in certain extraordinary circumstances. As to a patient's duty to seek information from a physician, the Court stated that:

¶ 50 The rationale underlying the doctrine of informed consent and a doctor's duty to inform a patient is that a patient has a right to decide whether to consent to or refuse a proposed course of treatment. A patient cannot make an informed decision unless a doctor discloses information material to the patient's decision. Thus we conclude that generally in an informed consent action, a patient's duty to exercise ordinary care does not impose on the patient an affirmative duty to ascertain the truth or completeness of the information presented by the doctor; nor does a patient have an affirmative duty to ask questions or independently seek information.

¶ 51 We agree with the plaintiffs and the court of appeals that in most cases it is illogical and contrary to the concept of informed consent to place on patients the burden of asking questions of their doctors or engaging in their own independent research. It is the doctor who possesses medical knowledge and skills and who has the affirmative duty under Wis. Stat. § 448.30 both to determine what a reasonable patient in the position of Ms. Brown would want to know and to provide that material information. The informed consent statute speaks solely in terms of the doctor's duty to disclose and discuss information related to treatment options and risks. The informed consent statute recognizes that a patient is not in a position to know treatment options and risks and, if unaided, is unable to make an informed decision.

¶ 52 For these reasons, we conclude that as a general rule a jury should not be instructed that a patient can be found contributorily negligent for failing to ask questions or for failing to undertake independent research. A patient's duty to exercise ordinary care generally does not encompass a duty to ascertain the truth or the completeness of the information presented by a doctor. Requiring patients either to ask questions or to independently seek information would erode a doctor's duty to obtain informed consent.

¶ 53 We do not conclude, however, that a patient may never be contributorily negligent for failing to seek information. It would, however, require a very extraordinary fact situation to render a patient contributorily negligent when the pa-

useful because they address whether the individual states will treat informed consent cases as arising in negligence or battery. Based on our research, the Wisconsin case is one of the few, if not the only, cases that directly address the issue raised herein, and Dr. Oghia did not cite to any cases to the contrary in his reply brief.

2. It appears that Wisconsin's contributory negligence is the equivalent of our comparative negligence.

tient accepts and trusts the information a doctor provides, because ordinarily a patient may rely on the knowledge and skills of a doctor.

*Id.* at 369–70 (footnotes omitted).

■ We recognize that *Dibbell* is based on a specific Wisconsin statute imposing a duty on physicians to provide informed consent. Furthermore, we recognize that we are not bound to follow the dictates of the Wisconsin Supreme Court. However, we find the analysis conducted by the Court to be persuasive. Applying that analysis to the facts herein, we conclude that a comparative negligence jury instruction may be appropriate in a medical malpractice case based on lack of informed consent. However, because of the unique relationship between a patient and physician, the case must be extraordinary, which this case is not.

In reaching this conclusion, we note that, in *Dibbell,* the physicians testified that they met with the plaintiff and her husband numerous times and discussed all options with her. The plaintiff and her husband testified that the physicians did not discuss other options with her nor did they adequately explain the potential risks of bilateral mastectomies. In this case, the Hollans testified that Dr. Oghia indicated he was going to perform sonic wave lithotripsy and did not mention ureteroscopy or any other alternatives. Dr. Oghia testified that he believes he spoke with the Hollans, but he could not remember what he said. Thus, the facts herein are less favorable to Dr. Oghia than they were to the physicians in *Dibbell.*

Based on the preceding, we hold that the trial court, in this case, did not err by refusing to issue the comparative negligence instruction proffered by Dr. Oghia.

### 3. Conduct of the Trial Judge

■ Dr. Oghia argues that the trial judge's conduct during the first day of trial resulted in undue prejudice to him. In support of his argument, Dr. Oghia states that the trial judge, *sua sponte,* disrupted his opening statement and cross-examination of Hollan numerous times. According to Dr. Oghia, these disruptions "might have" caused the jury to believe that "the judge disfavored" him, or "that the judge believed [Hollan] should prevail."

The problem with Dr. Oghia's argument is that the video during the portions of the trial in question has no audio. Kentucky Rules of Civil Procedure (CR) 75.13 provides for such mishaps by permitting the appellant to prepare and serve on the appellee a narrative statement setting forth his recollection of what occurred. The appellee then may file objections or proposed amendments to the appellant's narrative. Thereafter, the proposed narrative and any objections/amendments are to be served on the trial court for "settlement and approval." Once settled and approved, the narrative statement "shall be included in the record on appeal." Dr. Oghia did not avail himself of this procedure with regard to the first day of trial.

We have reviewed the video in question and it appears that the judge called the parties to the bench eight times during Dr. Oghia's opening statement and six times during his cross-examination of Hollan. The second time the judge called the parties to the bench, he dismissed the jury and conducted an approximately eight-minute long conference with the parties in chambers, an indication that some serious issue had arisen. However, as noted above, Dr. Oghia has not filed a narrative statement nor has he otherwise indicated what the parties and the judge discussed during the bench conferences or during the in-chambers conference. Therefore,

we cannot determine if the judge properly called the parties to the bench/chambers in response to inappropriate statements/questions by Dr. Oghia, or if the judge was improperly injecting himself into the proceedings.

Dr. Oghia has the burden of presenting a complete record on appeal. *Steel Technologies, Inc. v. Congleton,* 234 S.W.3d 920, 926 (Ky.2007). Because Dr. Oghia did not offer any narrative statement regarding what the parties and the judge discussed, we presume that the record supports the trial judge's actions and discern no error. *See Graves v. Commonwealth,* 283 S.W.3d 252, 255 (Ky.App.2009).

### 4. Failure to Declare a Mistrial

██ During the course of the trial, counsel for both parties and their expert witnesses referred to and cited to an American Urological Association treatise regarding the treatment of kidney stones. While making his closing argument, Hollan's counsel quoted a passage from that treatise indicating that the first line of treatment for a kidney stone such as Hollan's is shock wave lithotripsy, not ureteroscopy. Counsel for Dr. Oghia objected and moved for a mistrial, arguing that the passage had not been cited or read to the jury during trial. Counsel for Hollan argued that the passage had been read and/or cited to the jury during trial, and the judge overruled Dr. Oghia's motion.

Dr. Oghia argues that the trial court erred by not declaring a mistrial when counsel quoted the above-referenced passage. Additionally, Dr. Oghia argues that

the trial court erred by not reprimanding counsel and admonishing the jury. We address Dr. Oghia's arguments in that order.

In support of his first argument, Dr. Oghia cites primarily to *Risen v. Pierce,* 807 S.W.2d 945 (Ky.1991), for the proposition that he is not required to show that he was prejudiced by improper statements made during closing argument. We agree with this general proposition; however, *Risen* is distinguishable and the general proposition does not apply to the specifics of this case. In *Risen,* counsel referred to photographs in closing argument after the trial court had specifically excluded the photographs from evidence. Counsel also commented about the motives his opponent had for seeking to exclude those photographs. The Supreme Court of Kentucky found that such argument by counsel was egregious, negating any need to demonstrate prejudice.[3]

This case differs from *Risen* for four reasons. First, the court herein had not ruled that the passage read by Hollan's counsel was inadmissible. In fact, taking Dr. Oghia's argument at face value, neither party had cited or discussed the passage. Thus, counsel was not referring to inadmissible evidence, but to a portion of a document that had not previously been introduced. Second, the parties and their witnesses had cited to the American Urological Association treatise throughout the trial. Therefore, the jury was familiar with the treatise, unlike the jury in *Risen* which had not previously seen the contest-

---

**3.** In a footnote, Dr. Oghia also cites to *Big Rivers Elec. Corp. v. Barnes,* 147 S.W.3d 753 (Ky.App.2004) and *Smith v. McMillan,* 841 S.W.2d 172 (Ky.1992), as supportive of his argument. These cases are also distinguishable. In *Big Rivers,* as in *Risen,* the objected-to statement in closing argument referenced evidence that the trial court had specifically excluded. In *Smith,* the objected-to statements in closing argument impugned the integrity of opposing counsel and his client, made reference to photographs that had been excluded from evidence, and, with no evidentiary support, impugned the honesty of the plaintiff's expert witness.

ed photographs. Third, the passage Hollan's counsel read was consistent with testimony from expert witnesses regarding use of shock wave lithotripsy and, thus, not something foreign or new to the jury. Fourth, counsel for Hollan did not make any improper statements before the jury regarding Dr. Oghia's attempt to prevent him from reading that passage from the treatise. Thus, the statements by Hollan's counsel during closing argument simply do not rise to the level of egregiousness of counsel's statements in *Risen;* and, the trial court did not abuse its discretion by denying Dr. Oghia's motion for a mistrial.

In support of his second argument, Dr. Oghia cites *Horton v. Herndon,* 254 Ky. 86, 70 S.W.2d 975 (1934), for the proposition that a court should reprimand an attorney who, during closing argument, makes a statement of fact unsupported by the evidence, and then instruct the jury to disregard the statement. *Id.* at 977. *Horton* is distinguishable for three reasons. First, in *Horton,* there was no dispute that the statement by counsel was not supported by the evidence. Here, the parties admitted that a number of passages from the American Urological Association treatise had been read or cited to the jury. However, they disputed whether the passage in question had been one of those read or cited.

Second, in *Horton* there was apparently no evidence introduced at trial to support the statement. As noted above, there was testimony that shock wave lithotripsy is an appropriate choice for initial treatment of kidney stones. Therefore, unlike the statements in *Horton,* the concepts put forth in the disputed passage herein had been discussed by witnesses.

Third, counsel in *Horton* apparently asked the court to reprimand opposing counsel and to admonish the jury. Counsel for Dr. Oghia did neither. We recognize and sympathize with Dr. Oghia's argument that counsel's statement in closing argument could have amounted to palpable error. However, as noted above, we do not agree that the error, if it was error, rose to that level.

 Finally, we note that "[a] mistrial should be granted only when no other remedy will provide relief to the moving party. In most instances the prejudicial event can be rectified by a curative admonition." *Gould v. Charlton Co., Inc.,* 929 S.W.2d 734, 740 (Ky.1996). If Dr. Oghia believed counsel's statement was overly prejudicial, he should have asked the court to admonish the jury, a curative step that would have been sufficient to address any harm.

### CONCLUSION

For the foregoing reasons, we affirm the jury verdict and judgment in favor of Hollan.

ALL CONCUR.