RENDERED:  MAY 12, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0397-MR


COMMONWEALTH OF KENTUCKY
TRANSPORTATION CABINET,
DEPARTMENT OF HIGHWAYS                                     APPELLANT


                    APPEAL FROM TAYLOR CIRCUIT COURT
v.           HONORABLE SAMUEL T. SPALDING, JUDGE
                         ACTION NO. 18-CI-00268


HAROLD T. WILKERSON AND
BRENDA WILKERSON                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE,
JUDGES.

CETRULO, JUDGE:  This is an appeal by the Commonwealth of Kentucky

Transportation Cabinet, Department of Highways ("DOT") from a jury verdict and

judgment of the Taylor Circuit Court in an eminent domain action.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from the construction of a road now known as the Campbellsville Bypass, which joins Highway 55 with Highway 70. To create the bypass, DOT needed to take property owned by Harold and Brenda Wilkerson ("the Wilkersons"). Prior to the construction, their property was a farm and totaled approximately 125 acres. DOT took approximately 18 acres of that for the Bypass.

The Wilkersons did not contest DOT's right to condemn a portion of the property for this public purpose, so the parties began the process required by Kentucky Revised Statute ("KRS") 416.580 to determine the amount of damages that DOT was required to pay the Wilkersons. Unable to agree, DOT filed the petition for condemnation on September 7, 2018. Pursuant to the statute, the Court appointed three commissioners who returned their report on September 14, 2018, awarding the Wilkersons $161,000 for the 18 acres. Both parties filed exceptions to that award. Nevertheless, DOT paid the award into court and obtained a judgment in January 2019 to take possession of the property, leaving the issue of damages for further litigation.

Both parties had retained expert appraisers and exchanged reports prior to trial. The expert for DOT, Rick Baumgardner ("Baumgardner"), opined that the fair market value of the property was $229,500. The expert for the Wilkersons, Otto Spence ("Spence"), valued the property at $583,096. Both

experts were deposed prior to trial. DOT also filed a number of pretrial motions, including a *Daubert*[1] motion to exclude Spence's testimony and appraisal.

The trial court denied both motions, but specifically stated in the order that Spence would not be permitted to provide valuations derived from the methodology commonly known as "price-tagging," which is prohibited under Kentucky law. The matter proceeded to trial in March 2022.

DOT moved for a directed verdict at the close of its proof and at the close of evidence, both of which were denied. The parties tendered their proposed jury instructions, and the trial court declined to give DOT's proposed instruction as to the "highest and best use" of the property. The jury returned a verdict finding the value of the 18 acres before the taking was $1,302,089, and the fair market value after the taking was $718,993 – a difference of $583,096 – the exact amount Spence had suggested. The trial court then entered a judgment ordering DOT to pay $424,686, plus interest, to the Wilkersons, which represented the difference between the jury award and the prior commissioners' award. DOT timely appealed.

On appeal, DOT first asserts that the trial court erred in not directing a verdict in its favor. Tied to that argument, DOT asserts that the trial court erred in

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L .Ed. 2d 469 (1993).

refusing to strike Spence's testimony. If that testimony had been stricken, DOT asserts, Baumgardner's appraisal would have stood unrebutted, and the trial court would have had to grant the directed verdict motion. Next, DOT asserts that the trial court erred by permitting testimony and counsel's arguments regarding the hypothetical impact that the future Ford battery plant would have on the value of the Wilkersons' farm. Finally, DOT asserts that the trial court should have instructed the jury on the meaning of "highest and best use" in keeping with precedent.

## STANDARD OF REVIEW

In making the decision to admit or exclude expert testimony under *Daubert*, "the trial court must decide whether the testimony is reliable, a factual determination, and whether the testimony will assist the trier of fact in understanding or determining a fact in issue," a discretionary decision. *Oliphant v. Ries*, 460 S.W.3d 889, 897 (Ky. 2015) (citing *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004)). "We review the trial court's factual findings regarding reliability for clear error," while we use the abuse of discretion standard to review the trial court's decision regarding admissibility. *Id.* (citation omitted). A factual finding is deemed clearly erroneous if it is not supported by evidence of substance sufficient to induce conviction in the minds of a reasonable person. *City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842, 854 (Ky. 2013). However, a trial court

-4-

abuses its discretion only if its decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Miller*, 146 S.W.3d at 914.

## PRETRIAL RULINGS

We first address DOT's assertion that the trial court erred in refusing to strike the testimony of Spence. In support of this contention, we are directed to the in limine *Daubert* motion.

In that motion, DOT asserted three grounds to preclude Spence from testifying. It contended that (1) Spence had engaged in a valuation method known as price-tagging, forbidden by Kentucky precedent; (2) he relied on an improper definition of highest and best use; and (3) he used the incorrect effective date for his appraisal. The trial court heard arguments of counsel, considered briefs and deposition testimony, and issued findings of fact, conclusions of law, and an order on February 3, 2022.

In its ruling, the trial court noted that it had considered the testimony, presented only in depositions at that point. The trial court also noted that the Wilkersons' attorney acknowledged that price-tagging *was* prohibited by law and that the price-tagging portion of Spence's deposition testimony would not be presented at trial but had only been provided in response to questions by DOT's counsel. In short, the Wilkersons asserted that Spence would only testify at trial as

to the value of the property before and after the taking, in accordance with KRS 416.660(1).[2]

Based on those representations, the trial court held that Spence <u>could</u> testify at trial even though the ruling precluded utilization of "price-tagging" by the expert. Thus, it appears that the trial court did exactly what it was called to do under *Daubert* and our Rules of Evidence. It served as a gatekeeper and directed the parties as to what Spence could discuss at trial.

In fact, the trial court specifically ordered Spence to testify in accordance with KRS 416.660(1) and made it clear that he would not be allowed to provide price-tagging valuations. The order further specifically stated that Spence's testimony would not be excluded "at this time." That ruling does not reflect any abuse of discretion and indeed reflects a good understanding of DOT's position, as the trial court further directed that "Mr. Spence shall only be allowed to provide an opinion as to the value of the Wilkersons' farm immediately prior to and immediately after the taking." At trial, DOT made no objections to Spence's testimony. Further, DOT's cross-examination of Spence in no way illustrated that he had used an improper calculation. No avowal evidence was provided.

---

[2] KRS 416.660 (1) states, in pertinent part, that "all actions for the condemnation of lands under the provisions of KRS 416.550 to 416.670 . . . there shall be awarded to the landowners as compensation such a sum as will fairly represent the difference between the fair market value of the entire tract . . . immediately before the taking and the fair market value of the remainder thereof immediately after the taking . . . ."

However, on appeal, DOT asserts that Spence calculated his values using incorrect formulas, and that his calculations were based on price-tagging. This, DOT argues, is akin to allowing a mathematician to testify regarding the area of a rectangle when she has used the formula for the area of a circle to arrive at her opinions.

In response, the Wilkersons maintain that the trial court went to some lengths to exercise its gatekeeping responsibilities and made it clear that Spence's testimony would be limited at trial, if necessary, to comport with KRS 416.660(1). The trial court conducted a hearing on the motions; reviewed memoranda, depositions, and exhibits; and specifically ordered Spence to present only statutorily compliant valuations to the jury. If those valuations were indeed based on an improper valuation method, it was incumbent upon DOT to address that on cross-examination, or by avowal or another motion, so the trial court and this Court could determine whether an error occurred. However, with no objection during trial to any of the testimony of Spence, and with no avowal or other evidence to support DOT's claim that Spence used an incorrect formula, we cannot say that the trial court erred in allowing his testimony.

Next, DOT asserts that Spence relied on an improper definition of "highest and best use," an argument which the trial court also considered in its pretrial order. Spence's valuation was based upon his opinion that the highest and

best use of the property was residential. However, DOT's expert appraised the property based on future agricultural use.

DOT asserts that Spence's testimony as to residential development potential was purely hypothetical and not based on any actual demand for residential development in the area, at the time of taking. Again, in its pretrial rulings, the trial court addressed that concern; specifically, the definitions and explanations of the phrase, "highest and best use" as it appears in various cases arising out of condemnation trials. Based on its review of the caselaw, the trial court ultimately concluded that it was a matter for the jury and that evidence *could* be introduced at trial, which would allow a reasonable juror to conclude that a reasonable probability existed in the reasonably near future that the land taken could be used for residential purposes. In short, the trial court denied this basis for excluding Spence's testimony, finding that his opinion was not simply hypothetical or speculative, but a matter for the jury. We agree.

Both parties refer this Court to *Baston v. County of Kenton, ex rel. Kenton County Airport Board*, 319 S.W.3d 401 (Ky. 2010). In *Baston*, this Court reversed a jury award in favor of the landowner. *Id*. at 406. That decision was then reversed by the Kentucky Supreme Court, finding that a panel of this Court had substituted its weighing of the evidence for that of the jury. *Id.* There, the Supreme Court noted that

[b]ecause the market value is affected by potential uses of the property as well as the use to which it is currently being put, market value means the amount in cash that a willing buyer would pay to a willing seller, taking into consideration "all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered . . . to the full extent that the prospect of demand for such use affects the market value while the property is privately held."

*Id*. (quoting *Olson v. United States*, 292 U.S. 246, 255, 54 S. Ct. 704, 709, 78 L. Ed. 1236 (1934)).

Similarly, in *Paducah Independent School District v. Putnam & Sons, LLC*, 520 S.W.3d 367 (Ky. 2017), the Supreme Court reinstated a trial court's award in an eminent domain action, finding that the trial court's approach was legally sound and properly grounded in the record. The trial court therein considered evidence of a nine year old self-assessment by the landowner in its evaluation of the property value. *Id*. at 379. As the Supreme Court held therein, again reversing this Court for substituting its opinion for the factfinder, there is a liberal rule of admissibility in these condemnation cases. *Id*. In light of the direction of the Supreme Court to this Court, in *Baston* and *Paducah School District*, we do not find the trial court abused its discretion in permitting Spence's testimony.

Thirdly, on this point, DOT asserted that Spence's report included the wrong date for the appraisal, even though Spence testified at trial using the proper

date of taking and valuation, January 8, 2019. The trial court did not find a four-month discrepancy on the date of the report to be sufficient to exclude testimony from being presented at trial, and any previous error was clarified at trial. Again, the trial court did not abuse its discretion when it allowed Spence to testify.

## DIRECTED VERDICT ISSUE

DOT then argues that if the trial court <u>had</u> excluded the testimony of Spence, their expert witness would have stood unrebutted as to the fair market value of the property and, thus, the Commonwealth would have been entitled to a directed verdict in its favor. Having already determined that the trial court did not abuse its discretion in allowing the jury to consider testimony from both experts, and that it fulfilled its gatekeeping responsibility in considering the proposed testimony before trial, we cannot agree that the trial court erred in denying a directed verdict.

"In ruling on a directed verdict motion, the trial court should draw all inferences in favor of the nonmoving party, and a verdict should not be directed unless the evidence is insufficient to sustain the verdict." *Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 106 (Ky. 2008) (citing *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 64 (Ky. 1996)). Questions as to the weight and credibility of the testimony are reserved for the jury. *Id.* (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). Whether the trial court erred in

-10-

denying the motions for a directed verdict is a matter that this Court reviews for clear error. *Bierman v. Klapheke*, 967 S.W.2d 16, 19 (Ky. 1998).

> In considering this issue, we note a second directive from *Baston*:

> > Generally, <u>any fact</u> a willing buyer or seller would deem material to the negotiation is relevant, but if the landowner wishes to present to the jury a prospective use other than the use to which the property is being put at the time of the taking, he or she must show both that the land is physically adaptable to such use, and that there is a need or demand for such use at the time of the taking or that there will be in the reasonably near future.

*Baston*, 319 S.W.3d at 406-07 (emphasis added) (citing *Commonwealth, Dep't of Highways v. Gearhart*, 383 S.W.2d 922 (Ky. 1964)).

DOT asserts that the Wilkersons' evidence failed to show a "need or demand" for residential development at the time of the taking in 2019 or a reasonable period thereafter. However, Mr. Wilkerson testified that he believed his property would generate the most income if he sold it for residential development rather than its present agricultural use. Spence testified that he believed there *was* demand for residential development at the time of taking and that the property was well positioned for that, particularly in light of the purchases that the Wilkersons had made over many years to enhance accessibility of the property.

-11-

Kentucky's highest Court addressed a similar issue in *Commonwealth, Department of Highways v. Siler*, 411 S.W.2d 937 (Ky. 1967). There, the appellate court stated that

> [e]ven if the [property owners] had never thought of subdividing or selling the property (in which case, literally speaking, there could have been neither 'expectation' nor 'probability'), the evidence as to its location and topography was enough to suggest the probability of its having present value for residential development. That, with qualified opinion testimony to the same effect, provided adequate foundation for the evidence in question.

*Id*. at 939. *See also Commonwealth, Dep't of Highways v. Clore*, 438 S.W.2d 498, 500 (Ky. 1969).

As such, the appellate court found there was no "reasonable basis on which [the experts'] evidence could be held so devoid of probative value as to render the verdict unsupportable." *Siler*, 411 S.W.2d at 940. Here, similarly, Spence was qualified to give valuation testimony, and he provided similar evidence as the experts in *Siler*. Therefore, we too must find the verdict was supportable and the trial court did not err when it denied DOT's motion for directed verdict.

**TRIAL RULINGS**

DOT argues that the trial court erred in allowing witnesses to testify and in permitting the Wilkersons' attorney to argue about the potential effect of the Ford battery plant. This Court reviews the trial court's rulings on evidentiary

issues using an abuse of discretion standard. *Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky. 2001) (citation omitted).

DOT asserts that the trial court abused its discretion as the Wilkersons' case was premised on improper references to the "housing boom that would be coming" and the "literal thunderbolt of the Ford plant announcement," which made Spence's "predictions" of the highest and best use correct. Again, DOT points to *Baston*, which required that there be a need and demand for the stated use "at the time of the taking or that there will be in the reasonably near future." *Baston*, 319 S.W.3d at 406-07. However, *Baston* ultimately held that incidental references to the effect of the project in issue and comments of counsel in closing arguments were not so egregious as to require reversal of the jury verdict. *Id.* at 413. Once again, *Baston* does not provide the support that DOT suggests.

It is undisputed that the time of taking of this property by the Commonwealth was January 8, 2019. Sometime in 2021, Governor Beshear announced that two electric battery plants would be established approximately 45 miles from the Wilkersons' property. It has been widely publicized as the largest economic development in the history of the Commonwealth. It is certainly reasonable to assume that the jurors were all well aware of the planned future development.

While the plants are not expected to open until 2025, the Wilkersons' case at trial did largely focus on the suggestion that the future development would lead to extensive residential development and therefore should serve as further basis for evaluating the value of their taken property. Still, Spence opined that the highest and best use of the property at the time of the taking was residential development. In contrast, DOT's case relied upon Baumgardner, who offered his opinion that the highest and best use was agricultural. The jury heard evidence that the farm had been split in half with the cattle largely separated from shade and water by the bypass road. The two competing expert opinions resulted in a significant disparity in their valuations. By its verdict, the jury clearly chose to accept the value and the best use suggested by Spence.

On appeal, DOT asserts that the jury was influenced by the references to the future Ford plant made by witnesses and in closing argument by counsel for the Wilkersons. Unfortunately for DOT, those arguments fail primarily due to lack of preservation. We have carefully reviewed the record of proceedings, and there was no objection to the statements of counsel during closing arguments. Further, DOT did not object during the entire testimony of Spence. The record further reveals that Baumgardner, not Spence, was the expert who brought up the future development in his direct examination testimony:

> DOT Counsel: Rick, what can you tell the jury about development in the area of Dr. Wilkerson's property?

-14-

Baumgardner: There's a lot of large tracts and very limited new development has occurred. That doesn't mean it's not going to occur in the future because I think we are going to see demand increase. Socioeconomic factors for this market are going to change. You're all going to see some growth spurt because of the Ford plant in Hardin County for instance. I think it's going to influence 12-15 counties, so, but that's in 2022 and beyond. But in 2019 there just wasn't a lot of proof for a demand for subdivision potential at the time.

When the Wilkersons' counsel cross-examined Baumgardner, he asked what Baumgardner meant when he said the "Ford plant in Hardin County." DOT's counsel asked to approach the bench, whereupon the following exchange took place:

DOT Counsel: Your Honor, this discussion about the Ford plant in Hardin County is inappropriate.

The Court: He brought it up on direct.

Wilkersons' Counsel: I was going to say, he's the one who opened the door.

The Court: Motion overruled. Let's proceed.

The Kentucky Supreme Court has explained that "'opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof." *Commonwealth v. Stone*, 291 S.W.3d 696, 701-02 (Ky. 2009) (citation omitted). Even if evidence as to the future Ford

-15-

plant was inadmissible (which is not an issue before this Court), we cannot state that the trial court erred in permitting that testimony to be heard once the door was opened. In regard to that statement, we agree with the trial court that Baumgardner brought up the subject, and the opposing party was therefore entitled to cross-examine the witness on that subject.

As to the statements in closing, few civil cases have found that the statements of counsel were such as to inflame the passions of the jury and generate a verdict that was not supported by the evidence. Indeed, this verdict was supported by the evidence, as discussed. In reviewing the cases, we note that each case must be determined on its own unique facts, and an isolated instance of improper argument has seldom been found to be prejudicial. *See Stanley v. Ellegood*, 382 S.W.2d 572 (Ky. 1964) (holding it was improper for attorneys to ask jurors to treat a plaintiff how they would wish to be treated over several objections of opposing counsel); *see also H.P. Selman & Co. v. Goldstein*, 278 S.W.2d 713 (Ky. 1955) (holding it was not prejudicial for attorneys to refer to an expert as the party's "working employee" because that expert was regularly retained by the law firm representing that party).

When there has been a finding of prejudice, it has only been after objections were made or when the verdict appeared to have been the result of improper references to excluded testimony or "Golden Rule" arguments by

counsel.  *See Smith v. McMillan*, 841 S.W.2d 172, 174 (Ky. 1992).  That is not the case here, and we find no grounds to set aside the jury verdict on that basis.

In *Baston*, as well, while there were objections to the arguments of counsel, our Supreme Court held that "the airport's wealth was hardly a secret, and counsel's references to it were not" so inflammatory as to distract the jury from the evidence.  *Baston*, 319 S.W.3d at 413.  Likewise, here, the future development of the Ford factory was hardly a secret.  Additionally, it was first mentioned by Baumgardner on direct examination, and then there were no objections during the closing argument.  As such, the trial court did not abuse its discretion when it permitted the testimony, and there are no grounds to set aside the verdict for comments in closing regarding the Ford plant.

Finally, DOT argues that the trial court erred in declining to instruct the jury on the meaning of "highest and best use."  An alleged error regarding jury instructions raises a question of law which the appellate court reviews *de novo*.  *Oghia v. Hollan*, 363 S.W.3d 30, 31 (Ky. App. 2012).  As DOT frames it, "this trial was a dispute over the highest and best use of the property at the time of the taking – was it agricultural, the use at the time, or residential development, a hypothetical future use?"

A tendered instruction was provided with a definition of "highest and best use":

-17-

"Highest and best use" means the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered to the full extent that the prospect of demand for such use affects the market value while the property is privately held.

If the landowner wishes to present to the jury a prospective use other than the use to which the property is being put at the time of the taking, he or she must show both that the land is physically adaptable to such use, and that there is a need or demand for such use at the time of the taking or that there will be in the reasonably near future.

The trial court denied the request for this instruction finding that this was a jury question and that this definition instruction was not typically provided in such cases or in pattern instructions manuals. We find no reversible error in that ruling. When words or expressions are not commonly understood by the public, there is no error in defining them; however, in condemnation cases, the instructions are generally limited to defining the terms "fair market value." DOT has not directed us to any case which holds that "highest and best use" must also be defined. Kentucky courts generally support the practice of "bare bones" instructions and permitting counsel to "flesh out" the law in their arguments. *Cox v. Cooper*, 510 S.W.2d 530, 535 (Ky. 1974). Indeed, counsel for DOT did just that, when he read the above language defining "highest and best use" to the jury in his closing argument.

In conclusion, we turn for the final time to the Supreme Court decision in *Baston*:

> In Kentucky, a jury ultimately determines what compensation is just, and in this case there was more than ample evidence for the jury to decide that the Baston property, surrounded by industrial development and in an area which both the Airport Board and the Boone County Planning Commission envisioned as industrial, would be put to its highest and best use by being developed industrially rather than residentially.

319 S.W.3d at 413.

Likewise, in this case, there was ample evidence for the jury's decision. As such, we AFFIRM the judgment of the Taylor Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Colton W. Givens
Thomas N. Kerrick
Bowling Green, Kentucky

BRIEF FOR APPELLEES:

Barry Bertram
Campbellsville, Kentucky

Robert Spragens, Jr.
Lebanon, Kentucky