RENDERED:  JANUARY 16, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1258-MR

JASA PROPERTIES, LLC                                                APPELLANT

v.                     APPEAL FROM JEFFERSON CIRCUIT COURT
                       HONORABLE BRIAN C. EDWARDS, JUDGE
                       ACTION NO. 17-CI-004638

KENTUCKIANA ROOFING CO. INC.
AND DAVID BROWN                                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, L. JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  JASA Properties, LLC (JASA) brings this appeal from a

judgment upon a jury verdict entered October 8, 2024, in favor of Kentuckiana

Roofing Co., Inc. (Kentuckiana) in this action filed by JASA alleging breach of

contract and fraud.[1]  After careful review, we affirm the trial court.

---

[1] The judgment entered in this case is styled "Defendant's Proposed Judgment" and presumably
was tendered to the court by Kentuckiana Roofing Co., Inc.'s (Kentuckiana) counsel at the
conclusion of the trial.  An Opinion and Order Denying Motion for New Trial was also entered
on October 8, 2024.

## Background

In September of 2015, JASA contracted with Kentuckiana to construct a new roof on a house that is owned by JASA, but rented to tenants. The contract was signed by Jean Acton as a "Member" of JASA. Jean is also a licensed attorney and counsel for JASA. Jean's daughter, Anne Acton, is the only other member of the LLC. The contract was also signed by Chuck Harrer, an employee of Kentuckiana. The installation of the roof took place without incident. In March 2016, Anne went to check on the house after substantial rainfall and noticed several wet walls surrounding the chimney area.[2] Kentuckiana was contacted and the owner, David Brown, came to inspect the property. From there, many months of attempted negotiations and remediations followed. Kentuckiana denied the roof was the cause of the leak in the house and suggested there was a humidity problem. Kentuckiana offered to send a third-party roof inspector, but JASA refused. JASA insisted the leak was due to poor workmanship in the installation of the roof. At an impasse, JASA eventually hired a third-party, Bone Dry Roofing, to inspect the roof. Bone Dry Roofing determined the problem was related to the chimney masonry and removed the chimney and completed the necessary repairs. JASA

---

[2] The house was vacant at the time of the roof installation and in March 2016, when the leak was first noticed.

filed the underlying lawsuit against Kentuckiana and David Brown, individually, in September of 2017, alleging breach of contract and fraud.

JASA hired outside counsel for the lawsuit; however, when counsel became ill and subsequently passed away during the litigation, Jean stepped in to represent JASA. When it became apparent through discovery that JASA intended to call Jean as a witness, Kentuckiana filed a motion to disqualify Jean as counsel. The trial court granted the motion, but eventually allowed Jean to remain as counsel for JASA. However, the court refused to allow her to testify at trial.

A three-day jury trial took place beginning on August 20, 2024. On the morning of the third day, Jean made a motion for a mistrial, citing her hearing loss and exhaustion. The trial court denied the motion. At the close of evidence, the trial court granted a directed verdict in favor of David Brown for all claims against him individually, but allowed the claims against Kentuckiana to proceed to the jury. Thereafter, the jury unanimously answered "No" to the Jury Instruction No. 1, which stated, "Do you believe from the evidence that Kentuckiana Roofing Company, Inc. failed to substantially perform its duty under the contract in a good and workmanlike manner, and that any such duty to substantially perform its duty under the contract was a substantial factor in causing any water damages claimed by JASA Properties, LLC?" Record at 1362-63. JASA moved for a new trial pursuant to Kentucky Rules of Civil Procedure (CR) 59.01, which was denied by

the trial court. A judgment on the jury verdict was entered. This appeal followed. Further facts will be developed as necessary.

## Standard of Review

Based upon the issues raised by JASA on appeal, our review is mixed. As a general rule, upon review of a jury verdict, our review is limited to determining whether the trial court erred in failing to grant appellant's motion for directed verdict. *Lewis v. Bledsoe Surface Mining, Co.*, 798 S.W.2d 459, 461 (Ky. 1990).

Our standard of review from a trial court's denial of a motion for a directed verdict and motion for judgment notwithstanding the verdict is identical. *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 25 (Ky. 2017). To grant the motions, there must be "a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ." *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 261 (Ky. App. 2007) (quoting *Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky. App. 1985)). *See also Mountain Water Dist. v. Smith*, 314 S.W.3d 312, 314 (Ky. App. 2010). And, the evidence and reasonable inferences therefrom must be construed in a light most favorable to the nonmoving party. *Radioshack Corp.*, 222 S.W.3d at 261.

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *Oghia v. Hollan*, 363 S.W.3d 30, 32-33 (Ky. App. 2012). An abuse

-4-

of discretion looks to whether the trial's ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

As concerns a trial court's evidentiary rulings, our review also looks to an abuse of discretion. *Engles v. Commonwealth*, 373 S.W.3d 456, 457 (Ky. App. 2012). This would also include the improper application or interpretation of the Kentucky Rules of Evidence (KRE).

Finally, as concerns the denial of a motion for a new trial, a party is required to establish sufficient grounds to support the motion as set forth in CR 59.01. A trial court in Kentucky has broad discretion in granting or denying a new trial motion which will not be set aside unless there has been an abuse of said discretion. *Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 111 (Ky. 2012). Additionally, a jury verdict may not be set aside if there was sufficient evidence presented at trial to support the verdict. *Woods v. Asher*, 324 S.W.2d 809, 811 (Ky. 1959). Our review proceeds accordingly.

## Analysis

JASA makes numerous arguments on appeal. To wit: 1) there was a breach of contract, failure to disclose defects, substandard work, and fraud; 2) the directed verdict dismissing David Brown was in error and the jury verdict in favor of Kentuckiana was not based on evidence in the record; 3) the trial court erred in

disqualification of JASA's counsel; 4) the trial court pre-judged the case and should have voluntarily recused; 5) JASA was entitled to a mistrial due to the disability of counsel; 6) JASA was wrongfully denied a new trial; and 7) the award of costs against JASA was in error.[3]

JASA's first argument appears to be a restatement of counsel's opening and closing arguments to the jury. We address JASA's first three arguments together because they read as a general argument that the court erred in granting a directed verdict for David Brown, individually, and the jury verdict was in error. In other words, we perceive JASA's argument to be that there was sufficient evidence to support a claim against Brown and insufficient evidence to support the jury verdict. An appellate court, "upon completion of a consideration of the evidence, must determine whether the jury verdict was flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice. If it was not, the jury verdict should be upheld." *Bierman v. Klapheke*, 967 S.W.2d 16, 19 (Ky. 1998) (citations omitted).

---

[3] Kentuckiana urges us to strike appellant's brief for failure to comply with Kentucky Rules of Appellate Procedure (RAP) 32(A)(3). Specifically, Kentuckiana argues JASA failed to provide ample citations to the record in its statement of the case. While we acknowledge that JASA's brief does not totally comply with RAP 32, given this case has been in our court system for over eight years, and JASA sufficiently provides citations to the record below throughout its brief to support its arguments, the Court declines to strike appellant's brief in the interest of judicial economy and expediency. Similarly, in its reply brief, JASA urges us to strike Kentuckiana's brief due to what it characterizes as false allegations and statements. We also decline to strike appellee's brief.

After careful review of the trial record, including the evidence presented, we cannot conclude the jury's verdict was flagrantly against the evidence admitted. JASA maintains Kentuckiana failed to properly install flashing around the chimney when the roof was installed and failed to disclose the deteriorated state of the chimney. Kentuckiana maintained the chimney masonry was the problem and they were not hired to make repairs to the chimney. JASA called as witnesses, Anne, Daniel Costigan, a former employee of Bone Dry Roofing who inspected the chimney, and James Wilson, a retired engineer at Ford Motor Company who examined the roof and chimney at issue for JASA. David Brown testified for Kentuckiana. Although JASA presented evidence that the flashing around the chimney was improperly installed by Kentuckiana, the evidence also showed that the repairs completed by Bone Dry Roofing were solely to the chimney masonry which alleviated the leak. The evidence further established that Kentuckiana's contract to replace the roof did not include repairing the chimney and related masonry thereon. As a reviewing court, we are "not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. [Kentuckiana] is entitled to all reasonable inferences which may be drawn from the evidence." *Lewis v. Bledsoe Surface Min. Co.*, 798 S.W.2d 459, 461 (Ky. 1990) (citations omitted). That the jury believed the leak and resulting damages were not from a

botched roofing job by Kentuckiana, but rather from the preexisting condition of the chimney, is not contrary to the evidence of record. Thus, the jury verdict shall be upheld.

With regard to JASA's assertion that the directed verdict in favor of David Brown was in error, JASA fails to develop its argument and presents no supportive legal authority. As noted, JASA's contract was with Kentuckiana, not Brown individually, nor did he guarantee the contract. In granting the motion for a directed verdict by Brown, the trial court noted the conditions necessary to pierce the corporate veil and ruled that no evidence whatsoever had been presented by JASA in that regard. *See, e.g.*, *Inter-Tel Techs., Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012). We agree. On appeal, JASA does not argue that the trial court erred, but rather points to the various statements allegedly made by David Brown that JASA contends were fraudulent. These arguments are not relevant to Brown's liability personally for the contract. "It is not our function as an appellate court to research and construct a party's legal arguments, and we decline to do so here." *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) (citations omitted). JASA presents no substantiative legal argument to support claims against Brown, individually, in this case.

JASA next argues the trial court erred by disqualifying Jean as a witness while she was serving as counsel. Kentucky Rules of the Supreme Court

(SCR) 3.130, Kentucky Rules of Professional Conduct, Rule 3.7 provides, in relevant part only:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.

JASA argues that Jean's disqualification was "a substantial hardship."[4] The commentary to Rule 3.7 by the Kentucky Supreme Court explains that the party's right to choice of counsel must be weighed against the unfair prejudice created when that attorney testifies:

> [A] balancing is required between the interests of the client and those of the . . . opposing party. Whether the . . . opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client.

---

[4] Notably, the caselaw cited by JASA, *University of Louisville v. Shake*, 5 S.W.3d 107 (Ky. 1999), is wholly inapplicable as it does not address disqualification of an attorney as a witness, but rather, deals with an attorney having contact with a former employee of the defendant, University of Louisville, at a social event.

SCR 3.130(3.7), Comment (4).

This commentary reflects the Supreme Court's concern with the possible prejudice that could accrue upon an opposing party when an attorney testifies on behalf of his clients. Comment 2 notes that a major source of prejudice is the possibility that the jury will confuse the attorney as a witness with the attorney as an advocate; that being, is the attorney's statement proof or an analysis of the proof. The *Annotated Model Rules of Professional Conduct*, Rule 3.7, p. 356 (ABA 3rd ed. 1996) provides:

> The rule that a lawyer should not combine the roles of witness and advocate is designed to avoid public perception that the lawyer as witness is distorting the truth for the sake of a client or enhancing his or her own credibility as an advocate by taking an oath as a witness, and to spare opposing counsel the unfair and difficult task of cross-examining an adversary and impeaching the adversary's credibility. *See In re Am. Cable Publications, Inc.*, 768 F.2d 1194 (10th Cir. 1985) (concluding that Rule designed primarily for situations in which lawyer acts simultaneously as counsel and witness, or in which trial counsel's partner is nonparty witness); *Jones v. City of Chicago*, 610 F.Supp. 350, 362 (N.D. Ill. 1984) (major purpose behind advocate-witness rule is to avoid confusion between role of advocate and role of witness).

*See Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 558 (Ky. 2001).

The record on appeal establishes that Jean was a material witness. Most of the correspondence between JASA and Kentuckiana was signed by Jean.

Some correspondence appears on her attorney letterhead, others on JASA letterhead. Jean also filed a complaint against Kentuckiana with the Better Business Bureau. Record at 518-34. In the Introduction section of her brief to this Court, Jean states that Anne is the "sole member" of JASA, but the record shows Jean signed the contract with Kentuckiana as a member. In addition to SCR 3.130(3.7), it is longstanding law that "[w]hen a lawyer is a witness for his client, except as to merely formal matters, . . . he should leave the trial of the case to other counsel." *Morrison's Adm'r v. Redmon*, 287 S.W.2d 167, 168 (Ky. 1956) (internal quotation marks omitted). Clearly, Jean's testimony as a witness would have been confusing to the jury and prejudicial to Kentuckiana. We note that even though Jean was disqualified more than two years prior to the date of the trial, JASA claims several other attorneys were contacted and all refused to take what JASA characterizes as a "small, simple case of a botched roof job." Appellant's Brief at 16. JASA's assertions are not persuasive or relevant to the issue of Jean's testimony as a witness. Accordingly, we discern no error in the trial court's refusal to permit Jean to act as both witness and advocate for JASA.

JASA next argues that the trial court "pre-judged the case" and should have recused. Appellant's Brief at 19. We interpret this to mean that JASA believes the trial court was biased in favor of Kentuckiana. To illustrate the argument, JASA points to the time limitations on the trial imposed by the trial

court. We note that Kentucky Revised Statute 26A.015(2)(a) provides, in relevant part:

> (2) Any justice or judge of the Court of Justice or master commissioner shall disqualify himself in any proceeding:
>
> > (a) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding[.]

SCR 4.300, Canon 2, Rule 2.3(A) and Rule 2.3(B) are also applicable to this issue and state:

> **(A)** A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.
>
> **(B)** A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

And, Rule 2.11(A)(1) of Canon 2 clearly requires mandatory recusal of a judge who is biased against a party or his attorney.

Based on our review of the record below, JASA never filed a motion for recusal or raised the issue before the judge at trial. Arguably, JASA failed to

-12-

preserve this argument for review on appeal. However, the Kentucky Supreme Court has addressed the lack of preservation in a recusal bias claim holding: "it should be noted that in regard to the argument regarding recusal, [an appellant] is not required to preserve the error as noted in *Commonwealth v. Carter*, Ky., 701 S.W.2d 409 (1985)." *Nichols v. Commonwealth*, 839 S.W.2d 263, 266 (Ky. 1992); *see also Small v. Commonwealth*, 617 S.W.2d 61 (Ky. App. 1981). Accordingly, we have reviewed JASA's argument on the merits.

The record before us is devoid of any statement or action by the trial court that could be conceived as bias in favor of Kentuckiana or against JASA, including the time limitations imposed at trial. As the Kentucky Supreme Court has explained, a trial court "is vested with a large discretion in the conduct of the trial of causes and an appellate court will not interpose to control the exercise of such discretion by a court of original jurisdiction, unless there has been an abuse or a most unwise exercise thereof." *Transit Auth. of River City (TARC) v. Montgomery*, 836 S.W.2d 413, 416 (Ky. 1992). In exercising that discretion, "[a] trial court clearly has the power to impose reasonable time limits on the trial of both civil and criminal cases . . . . As long as these trial time limits are not arbitrary or unreasonable we will not disturb the court's decision on review." *Hicks v. Commonwealth*, 805 S.W.2d 144, 151 (Ky. App. 1990) (citation omitted).

-13-

The trial in this matter lasted three days. The trial court repeatedly reminded *both* parties of the time limitations, including limiting the length of closing arguments on the third day. Based on the record before us, we cannot conclude that the time limitations imposed by the trial court were arbitrary or unreasonable, nor did the trial court display bias or prejudice toward JASA or Jean during the trial to warrant the judge's recusal.

JASA's next two arguments are interrelated. First, JASA claims the trial court erred when it denied its motion for a mistrial due to Jean's physical disabilities. As previously noted, our standard for review of the denial of a motion for mistrial is abuse of discretion. *Oghia*, 363 S.W.3d at 32-33. "A mistrial is appropriate only where the record reveals a manifest necessity for such an action or an urgent or real necessity." *Knuckles v. Commonwealth*, 315 S.W.3d 319, 322 (Ky. 2010) (internal quotation marks and footnote omitted). JASA also argues the trial court erred when it refused to grant a new trial pursuant to CR 59.01. The rule provides that a trial court *may* grant a motion for a new trial for any of the following grounds:

> (a) Irregularity in the proceedings of the court, jury or prevailing party, or an order of the court, or abuse of discretion, by which the party was prevented from having a fair trial.
>
> (b) Misconduct of the jury, of the prevailing party, or of his attorney.

(c) Accident or surprise which ordinary prudence could
not have guarded against.

(d) Excessive or inadequate damages, appearing to have
been given under the influence of passion or prejudice or
in disregard of the evidence or the instructions of the
court.

(e) Error in the assessment of the amount of recovery
whether too large or too small.

(f) That the verdict is not sustained by sufficient
evidence, or is contrary to law.

(g) Newly discovered evidence, material for the party
applying, which he could not, with reasonable diligence,
have discovered and produced at the trial.

(h) Errors of law occurring at the trial and objected to by
the party under the provisions of these rules.

CR 59.01. Again, the denial of the motion for a new trial is reviewed for an abuse

of discretion. *Savage*, 390 S.W.3d at 111.

Although JASA does not identify which provision of CR 59.01 it

deems applicable to its argument that warrants a new trial, it points to Jean's

hearing loss and exhaustion for both mistrial and new trial. However, careful

review of the trial video does not support JASA's assertions. Although there were

several instances over the course of the three-day trial when Jean indicated she

could not hear a witness, this appeared to be remedied by either the witness

speaking up or Jean moving closer to the witness stand. At one point, the trial

court offered hearing devices, but Jean declined, saying she was wearing

-15-

prescription hearing aids. The video record of the trial also reflects Jean ably questioned witnesses on both direct and cross-examination. She raised objections and argued robustly during bench conferences. Our review also reflects that Jean strongly advocated to remain counsel for JASA leading up to the trial and filed an amended witness list which excluded her so that she could continue to represent JASA during the trial. The trial court did not abuse its discretion when it refused to grant a mistrial or a new trial for JASA.

We now turn to JASA's final argument that the trial court erred when it assigned court costs to JASA. Notably, CR 54.04(1) provides in relevant part that, "[c]osts shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." The trial court's judgment entered after trial states, in relevant part:

> **IT IS HEREBY FURTHER ORDERED AND ADJUDGED** that, as the prevailing party, [Kentuckiana] shall be entitled to their recoverable court costs, and the Court will determine appropriate recoverable costs upon submission if any objection is filed by [JASA].

October 8, 2024, judgment at 2. While JASA did file an objection to the award of costs in its response to the proposed judgment tendered by Kentuckiana, it does not appear from the record on appeal that Kentuckiana submitted its costs for review or that the trial court entered an order awarding Kentuckiana costs. In other words, this Court has no way of knowing what costs JASA asserts are objectionable and

-16-

thus the issue is not ripe for review.  "An appellate court is without authority to review issues not raised in or decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (internal quotation marks and citations omitted).  In the event a subsequent order on actual costs awarded is entered by the trial court, that order would be appealable.  Accordingly, we find no error and decline to further address this issue.

## Conclusion

For the foregoing reasons, the judgment of the Jefferson Circuit Court in favor of Kentuckiana is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jean Acton
Louisville, Kentucky

BRIEF FOR APPELLEE:

David K. Barnes
Benjamin N. Smith
Louisville, Kentucky